# DONNELLY v. UNITED STATES.

## ON PETITION FOR REHEARING.

No. 97. Petition for rehearing presented May 31, 1913.—Decided June 9, 1913.

This court will permit a petition for rehearing to be filed in order to determine whether it ought to be entertained and even if the point raised as to expressions in the original opinion have a basis, if the decision did not depend on that point the petition will be denied.

The court recalls that part of the opinion heretofore delivered in this case, *ante*, pp. 262, 263, which holds that "By the acts of legislation mentioned, as construed by the highest court of the State—(a) the act of 1850, adopting the common law and thereby transferring to all riparian proprietors (or confirming in them) the ownership of the non-navigable streams and their beds; and (b) the acts of February 24 and of March 11, 1891, declaring in effect that the Klamath River is a non-navigable stream—California has vested in the United States, as riparian owner, the title to the bed of the Klamath, if in fact it be a navigable river," and leaves that matter undecided.

As the conviction of the plaintiff in error can be sustained without reference to the question of navigability of the Klamath River, a petition for rehearing based on assertions of errors in that respect in the opinion heretofore filed, *ante*, p. 243, is denied.

THE facts are stated in the opinion.

*Mr. John F. Quinn*, with whom *Mr. W. F. Clyborne* was on the brief, for plaintiff in error.

*Mr. Assistant Attorney General Denison* for the United States.

MR. JUSTICE PITNEY delivered the opinion of the court.

A petition for rehearing is presented, which we permit to be filed in order to determine whether it ought to be entertained.

The petition raises several points, only one of which is deemed worthy of mention; and that is the insistence that the court, in basing its decision herein (228 U. S. 243, 262, etc.) upon the California acts of February 24, 1891, c. 14 (Laws, 1891, p. 10) and of March 11, 1891, c. 92 (Laws, 1891, p. 96) (Political Code, § 2349), and the decision of the Supreme Court of that State in *Cardwell* v. *County of Sacramento*, 79 California, 347, 349, to the effect that the enumeration of the navigable rivers of the State as made by the legislature is exclusive and that no other rivers are navigable under the laws of California, overlooked the effect of the decisions of the Supreme Court of California in other cases (*People* v. *Elk River M. & L. Co.*, 107 California, 221, 224; *Forestier* v. *Johnson*, 44 Cal. Dec. 471, No. 2350, October 1, 1912; and *People* v. *Kerber*, 152 California, 731), and that our decision respecting the navigability of the Klamath River and state ownership of the bed thereof is so serious in its ulterior consequences that it ought not to be adhered to without further argument.

The judgment affirming the conviction of the plaintiff in error can be sustained, however, without regard to the question thus raised. It is conceded that whether the Klamath is navigable at the place where the homicide occurred is a question of fact. Of course the tide ebbs and flows at the river's mouth, but the *locus in quo* is approximately twenty-five miles from the mouth, and quite beyond any possible influence of the tide. As the opinion points out, there was evidence tending to show that the stream is navigable in fact at certain seasons from Requa (near its mouth) up to and above the *locus in quo*. But the evidence was by no means conclusive. It showed an apparently irregular traffic, in times of high water only, employing Indian canoes, "dug-outs," and at certain times small steamboats and gasoline launches. In this state of the evidence, the trial court could not, nor can

we, take judicial notice of the stream as being navigable in fact; especially in the face of a declaration by the legislature of the State that it is not navigable. *United States* v. *Rio Grande Irrigation Co.*, 174 U. S. 690, 698.

Upon the argument, the Government cited and relied upon the acts of February 24 and March 11, 1891, and the decision in *Cardwell v. County of Sacramento*, as showing that the State had abandoned any claim it might have had to the bed of the stream, and surrendered such rights to the riparian proprietors—in this case to the United States, for the benefit of the Indians. Counsel for plaintiff in error did not in his brief (nor, so far as we recall, in the oral argument) make any reply to this contention, nor challenge the authority of *Cardwell* v. *County of Sacramento*, or the effect of that decision upon the matter in controversy. Being unable to find that the case had been overruled or questioned, we accepted it as authoritative upon the question of state policy, with the result of concluding upon the whole matter that whether the river were or were not navigable in fact, its bed was to be deemed as included within the extension of the Hoopa Valley Reservation.

But the record shows that upon the trial, the plaintiff in error did not request or suggest that the question of the navigability of the river at the *locus in quo* should be considered as a question of fact, and disposed of accordingly. At the close of the evidence for the Government, counsel moved for a dismissal of the action upon the ground that it had not been shown that the alleged offense happened within the limits of the Reservation. And at the close of all the evidence the trial court was requested to instruct the jury that the river was not within the limits of the Reservation, and that if the alleged crime was committed upon the river, the evidence had failed to establish the jurisdiction of the court to try the defendant. This insistence was repeated in different forms, but in each in-

stance the court was in effect requested to rule as matter of law that the Klamath River was not within the Reserva-tion. This contention was as properly attributable to the theory that the territorial limits as described in the execu-tive order of President Harrison, dated October 16, 1891, did not in terms include it, as to the theory that the river was not navigable. It was upon the former theory that plaintiff in error principally relied in this court. If the suggestion of excluding the river from the Reservation on the ground that it was navigable was intended to be made the subject of exception at the trial, this point should have been clearly raised; and it was not. Moreover, even as-suming that the requests were intended to point to the question of navigability, they at best called upon the court to decide that question as a question of law, and not to determine it, or to have the jury determine it, as a ques-tion of fact.

The state of the record, therefore, did not entitle the plaintiff in error to call upon this court to decide the merits of the question of the navigability of the river and its effect upon the jurisdiction of the Circuit Court over the homicide. In discussing the merits we assumed (in favor of plaintiff in error) that the question was raised by the record. But since it is now suggested that in so doing we have passed upon a question that was not adequately argued, and which in its consequences involves important interests, other than those of the plaintiff in error, we pre-fer to and do recall so much of the opinion as holds that—

"By the acts of legislation mentioned, as construed by the highest court of the State—(a) the act of 1850, adopting the common law and thereby transferring to all riparian proprietors (or confirming in them) the ownership of the non-navigable streams and their beds; and (b) the acts of February 24 and of March 11, 1891, declaring in effect that the Klamath River is a non-navigable stream—Cali-fornia has vested in the United States, as riparian owner,

the title to the bed of the Klamath, if in fact it be a navi-gable river." That matter, therefore, we leave undecided.

But since, as already shown, the conviction of the plain-tiff in error may properly stand without regard to that question, we deem that no useful purpose would be served by further oral argument.

*Rehearing denied.*