[Civ. No. 7131.   Third Dist.   Feb. 26, 1946.]

MARY A. NELSON et al., Appellants, v. I. N. ROBINSON et al., Respondents.

Jos. H. Huberty for Appellants.

Jones & Quinn for Respondents.

THE COURT.—This action was begun in 1937, and in 1938 plaintiffs filed their second amended complaint alleging in the first count that they were the owners of certain described real estate in San Joaquin County, and that defendants claimed some right, title and interest therein adverse to plaintiffs' ownership, which claims were without right.  In a second count they alleged that defendants had constructed an irrigation canal on their own land along higher ground lying easterly above plaintiffs' land, and that within three years

last past had, without right and against plaintiffs' will, allowed water to percolate from said canal upon the lands of plaintiffs and had thereby injured said lands and the crops growing thereon. Plaintiffs prayed a decree quieting their title against any claims of defendants, that 'defendants be restrained from asserting any rights in plaintiffs' lands and from allowing waters to seep from their canal upon lands of plaintiffs, and that plaintiffs recover damages. Defendants, in answer to plaintiffs' complaint, admitted they claimed some interest adverse to plaintiffs. They alleged that they had constructed their canal in 1925 and had used it every year since; that by reason of the nature of the lands there had been a certain amount of seepage therefrom onto plaintiffs' land which had become visible as early as 1926, and had been visible and apparent during each and every irrigation season thereafter; that ''said seepage and percolation affected the crops growing on lands of the plaintiffs in only that portion of said lands that bordered upon said canal or ditch, and not to exceed a strip fifty (50) feet wide; that said lands and the crops thereon have been visibly affected and the injury thereto apparent commencing in the year 1926, and each and every year thereafter''; that said seepage had remained constant and that they claimed the right to operate the ditch in the future as in the past. They denied any loss of crops by plaintiffs or damages in any sum whatsoever. In a separate defense they pleaded that plaintiffs' causes of action were barred by Code of Civil Procedure, section 338, subdivision 2, then alleged the acquisition of a prescriptive right, asserting that for five years last past they had claimed said right, that at all times the seepage onto plaintiffs' lands had been ''open, visible, notorious and adverse to the plaintiffs rights, and was known to be adverse by said plaintiffs.''

The action was tried in March, 1939, and resulted in a judgment that plaintiffs were the owners of the lands described in their complaint but that same were subject to the prescriptive right of defendants to permit water to seep from the canal ''to the same extent and in the same manner as they have heretofore.'' Plaintiffs were enjoined from asserting any injury to their lands or crops by reason of seepage from said canal, and were denied damages.

From that judgment appeal was taken to this court, and the judgment was reversed. (*Nelson* v. *Robinson,* 47 Cal.App. 2d 520 [118 P.2d 350].) The ground for reversal was that

the evidence before the trial court was insufficient to sustain a finding of that court that defendants had acquired a right by prescription to flood plaintiffs' lands by seepage and percolation. The opinion stated, pages 526-527:

"One of the essentials of adverse user in this case is the actual infringement of the rights of appellants for a period of time each year, for the statutory period, that is, the saturation and percolation of plaintiffs' land by seepage from defendants' canal must have been known to the former, or at least facts and circumstances must be proven from which it might be reasonably inferred that plaintiffs had such knowledge. The trial court did find that such knowledge was a fact, but the record fails to sustain such finding. The testimony shows that there were three occasions when the seepage water was visible on the surface of appellants' land. One was in the year 1925, one in 1928, and the other in 1935. The finding that the seepage and percolation was visibly apparent each year since 1926, is wholly without support in the record."

The opinion also stated that it could not be assumed that because water seeped in one year, it would continue to do so every year, it being a matter of common knowledge that porous ground is often sealed and rendered impervious to further percolation by particles of sand carried in the water; that the evidence was insufficient to charge plaintiffs with knowledge—an essential element in the acquisition of a right by prescription; also that hostility of use was not proven, the evidence showing that when, in 1926, seepage became visible, and plaintiffs complained to defendants, the latter took steps to correct the condition; that no seepage was thereafter visible until 1935 and when plaintiffs then complained to defendants the latter dug a drainage ditch in an effort to intercept the percolating water; and that when, in 1936, there was a recurrence of visible seepage, defendants again took steps to correct conditions by installing a pump to return the percolating water to the canal.

A petition by respondents for hearing by the Supreme Court was denied.

The action was thereafter retried in May, 1943, and resulted in a judgment for defendants which merely decreed that plaintiffs take nothing by reason of their action and that defendants recover their costs. From that judgment this appeal was taken. Appellants assert that the facts developed on the second trial are identical with those proven on the first trial,

that the trial judge refused to apply the law of the case as laid down by the appellate court, that it erred in refusing damages to plaintiffs, and that the judgment is defective in that it failed to quiet plaintiffs' title as prayed.

The trial court filed a memorandum opinion, which is set forth in the record, and made findings of fact. It again found that defendants had acquired a prescriptive right to permit waters to seep and percolate out of their canal to the same extent and in the same manner as they had theretofore; that the seepage first visibly affected certain portions of plaintiffs' lands in 1926, and that "annually thereafter up to 1935, while said ditch was in use for irrigation purposes, seepage continued in diminishing quantities to escape from said ditch and visibly affected portions of Plaintiffs' lands in the same areas as were affected in 1926. That in the years 1935 and thereafter up to the trial of this action the same portions of Plaintiffs' lands were affected by seepage from Defendants' ditch, but were not affected to an extent that caused any damage to the lands or crops thereon. That the said portions of Plaintiffs' land so affected did not, in the aggregate, exceed one half an acre, and that had there been a complete loss of crops thereon the loss therefrom would not have exceeded $25.00 per year. That said portions of Plaintiffs' lands were three (3) in number, a small low spot in the northeast corner of Plaintiffs' lands, a small area at what is called the 'elbow', and another small area at the southeast corner of Plaintiffs' land near what is referred to as the 'mail box.' That on numerous occasions between 1928 and 1935, the Plaintiffs complained about said seepage to Defendant I. N. Robinson, Jr., and were advised by him on each of said occasions that there was nothing that he could do about it. That Defendants for more than five (5) years prior to 1935, continuously, openly, notoriously and adversely operated said ditch as aforesaid claiming the right to do so."

It further found that any deterioration to plaintiffs' crops alleged to have occurred in 1935 to 1937, resulted from causes other than seepage from defendants' canal, and were caused by age of crops, methods of farming, high water table caused by percolation from Middle River (which flows along the west side of plaintiffs' lands) and inadequate drainage of irrigation water placed by plaintiffs upon their lands; that seepage from defendants' canal has gradually diminished; that the condition of plaintiffs' lands has not been materially

affected by seepage from defendants' canal and will not in the future be so affected while same is being used and operated as it has in the past; that seepage from said canal could only be prevented by sealing or cementing the bottom and sides thereof which would require large amounts of materials not now available, but which, if available, would cost between $15,000 and $25,000.

From the foregoing it is apparent that while the trial court has found that defendants have acquired "a prescriptive right to permit waters to seep and percolate from its canal to the same extent and in the same manner as they have heretofore," the judgment fails to so decree. Plaintiffs' title has not been quieted and no prescriptive right has been adjudged.

Our first inquiry, then, is whether the judgment should be reversed for failure to adjudicate the rights of the respective parties.

*Lantz* v. *City of Los Angeles*, 185 Cal. 262 [196 P. 481], is a parallel case—an action to quiet title with a claim of easement on the part of defendant acquired by adverse user for the prescriptive period. The trial court made findings to the effect that plaintiff was the owner of the land in question, but that for more than five years prior to the commencement of the action the city had been the owner of an easement over same for street purposes. The judgment merely provided that plaintiff take nothing and that defendant recover costs. The Supreme Court said, page 271: "This was not in conformity with the findings, nor with the conclusions of law therein declaring the relief to be given to the parties, as it should have been, and it is not just to the plaintiff." The judgment was thereupon reversed. In *Peterson* v. *Gibbs*, 147 Cal. 1 [81 P. 121, 109 Am.St.Rep. 107], plaintiff sought to quiet title to a tract of land, alleging that defendants claimed an interest adverse to him which claim was without right; and he asked that defendants be required to set forth all adverse claims asserted by them, that said claims be determined and that it be adjudged that defendants have no estate or interest in the property. A motion for a nonsuit was granted and judgment was entered that plaintiff take nothing and that defendants recover their costs. The Supreme Court reversed the judgment, saying, at page 5:

"Such an action is brought, as authorized by the statute, 'for the purpose of determining' any adverse claim that may be asserted therein by a defendant to the land in controversy,

and this does not mean that the court is simply to ascertain, as against a plaintiff shown to have a legal interest, whether or not such defendant has *some interest*, but also that the court shall declare and define the interest held by the defendant, if any, so that the plaintiff may have a decree finally adjudicating the extent of his own interest in the property in controversy. The object of the action is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to. Of course, if the plaintiff fails to show any legal interest in the property in controversy, and as to which he asserts title, he must fail altogether, and could not complain of a judgment of nonsuit, but where he shows any legal interest, he is entitled to have that interest declared by the court." (Also, see, *Williams* v. *Rush,* 134 Cal.App. 554, 560-561 [25 P.2d 888]; *Goodfellow* v. *Barritt,* 130 Cal.App. 548, 564-565 [30 P.2d 740]; *Hurt* v. *Pico Investment Co.,* 127 Cal.App. 106, 113 [15 P.2d 203]; *Pimentel* v. *Hall-Baker Co.,* 32 Cal.App.2d 697, 706 [90 P.2d 588].)

In the Pimentel case above cited the court said: "The respective interests of the parties in the land (assuming the evidence will show such an existing interest in defendant) should have been adjudicated after trial and evidence submitted by the parties." ▇ That brings us to the next question raised on this appeal, and that is whether there is in the present record sufficient to show an existing interest in defendants, and to support the finding of the trial court that defendants have acquired a prescriptive right.

As we have hereinbefore stated, this court, on the prior appeal, held that in order to acquire the prescriptive right claimed by defendants it was necessary for them to show "the actual infringement of the rights of appellants for a period of time each year, for the statutory period, that is, the saturation and percolation of plaintiffs' land by seepage from defendants' canal must have been known to the former, or at least facts and circumstances must be proven from which it might be reasonably inferred that plaintiff had such knowledge"; that though the trial court so found, the record failed to sustain such finding. Also that the finding that the seepage was visibly apparent each year since 1926, was wholly without support in the record. It was also held that it was incumbent upon defendants to show hostility of user—a claim asserted

against the whole world—and that the evidence was insufficient to establish a claim of right against plaintiffs.

On this appeal appellants urge that the facts developed at this trial are the same shown at the former one, and that, under the law of the case as previously laid down, it must be held that the evidence is still insufficient to establish an adverse right in defendants by prescription. Respondents assert, on the other hand, that "the conclusion of the Appellate Court is contrary to the facts now disclosed by the record"; but they entirely fail to point out any new testimony bearing upon the two essentials for the acquisition of an adverse right by prescription which were held lacking in the testimony given at the first trial. Their efforts are mainly directed to an attempt to persuade us that the former decision was erroneous. Whether erroneous or not, it determined the law of the case, and in the absence of new evidence sufficient to supply that held to be lacking on the former trial, no different conclusion is justified. The recent case of *Steelduct Co.* v. *Henger-Seltzer Co.*, 26 Cal.2d 634, 643-644 [160 P.2d 804], is controlling on this point. Also see *Wells* v. *Lloyd,* 21 Cal.2d 452 [132 P.2d 471]; *Penziner* v. *West American Finance Co.,* 10 Cal.2d 160, 169 [74 P.2d 252]; *Allen* v. *California Mutual B. & L. Assn.,* 22 Cal.2d 474 [139 P.2d 321]; *Chard* v. *O'Connell,* 48 Cal.App.2d 475, 478 [120 P.2d 125]; *Cafe Apollo Co.* v. *Anselm,* 70 Cal.App.2d 654, 656 [161 P.2d 473]. Therefore, unless on the retrial there was produced evidence different from that adduced at the first trial, to show that plaintiffs had knowledge and that defendants' use was hostile to plaintiffs, it must be held now that the evidence is insufficient to support the present findings of the trial court in this behalf. We have searched the record diligently and have carefully compared the testimony given in the two trials and are unable to find that respondents have supplied the deficiencies held fatal on the prior appeal.

It is next contended by appellants that the trial court erred in refusing to award damages to them. They rely upon the statement by this court in its former opinion that appellants were "entitled to recover for any injury to their lands which was inflicted within three years prior to the commencement of the action," and that "the evidence as to the extent of the damages was undisputed." The present findings of the trial court are that seepage from defendants' ditch first visibly affected portions of plaintiffs' lands in 1926, and that

annually thereafter up to 1935 seepage continued to escape from said ditch and "visibly affected portions of plaintiffs' lands in the same areas," and that in the years after 1935 and up to the trial of this action the same portions were affected by seepage from defendants' ditch, but "they were not affected to an extent that caused any damage to the lands or crops thereon"—that they did not, in the aggregate, exceed one-half an acre, and that had there been a complete loss of crops thereon the loss would not have exceeded $25 per year. It also found that all deterioration to crops alleged to have occurred in 1935 to 1937, inclusive, resulted from causes other than the seepage from defendants' ditch, such causes being the age of crops, methods of farming, high water table caused by rainfall and percolation from Middle River, and inadequate drainage of irrigation waters placed upon their lands by plaintiffs themselves.

While we do not find in the record before us any testimony that contradicts the testimony of plaintiffs as to the *amount* of damage to crops that they suffered, the present record does reveal much new evidence bearing upon the question whether such damage was due to seepage from defendants' canal. Respondents in their reply brief have pointed out testimony which shows that after the first trial they carried on a series of tests by means of borings on plaintiffs' lands for the purpose of showing that the excessive wetness of said lands, which it is contended by appellants resulted in damage to their crops, was not due to percolation from the canal but from the other causes stated in the court's findings. Obviously, if such damage was due to such other causes plaintiffs are not entitled to recover for them from respondents. However, since the judgment must be reversed for the reasons hereinabove stated, it is unnecessary for us to pass upon the question of damages.

The judgment is reversed.