Kenneth DAY and John Rouse, Appellants
(Defendants below),

v.

J. Reuel ARMSTRONG, Appellee
(Plaintiff below).

R. K. Stewart, Dee G. Johnson, Charles E. Piersall, C. K. "Buddy" Faught, Dr. Will Schunk, William C. Jensen, Carroll Noble, John C. Borzea, Verg Teeters, Intervenors

R. K. STEWART, Dee G. Johnson, Charles E. Piersall, C. K. "Buddy" Faught, Dr. Will Schunk, William C. Jensen, Carroll Noble, John C. Borzea, Verg Teeters, Appellants
(Intervenors below),

v.

J. Reuel ARMSTRONG, Appellee
(Plaintiff below),

and

Kenneth Day and John Rouse, Appellees
(Defendants below).

Nos. 2961, 2966.

Supreme Court of Wyoming.

May 23, 1961.

Bard Ferrall and John F. Lynch of Greenwood, Ferrall, Bloomfield, Osborn & Lynch, Cheyenne, for Kenneth Day and John Rouse.

Norman B. Gray, Atty. Gen., and George J. Argeris, Asst. Atty. Gen., appearing amicus curiae.

Byron Hirst, Cheyenne, for R. K. Stewart and others.

J. Reuel Armstrong, Rawlins, pro se.

Before BLUME, C. J., and PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Plaintiff in March, 1958, sought judgment declaring his rights and those of the

public, under applicable provisions of the Federal Constitution, the State Constitution, the laws of Wyoming, and judicial decisions, to go upon the channel, between its high water marks, and to float upon the waters of the North Platte River where it flows upon and across defendants' lands.

Defendants denied plaintiff's and the public's right to either use the channel or to float upon the waters of the river as they crossed their lands, but joined in asking a declaratory judgment.

The State of Wyoming by its Attorney General was allowed to appear as amicus. curiae.

Other parties permitted to intervene likewise asked for declaratory judgment, but claimed for the public only the right to float upon or within the waters of the river as it flowed upon and across the lands of the defendants.

During the course of the action, the Thirty-Fifth State Legislature enacted Ch. 205, S.L. of Wyoming, 1959, §§ 41–527, 41–528, W.S.1957 (1959 Supp.), the first section of which provides as follows:

"§ 41–527. *Floating persons and property by boat, canoe or raft on streams.*—Persons and their property may only float by boat, canoe or raft for any lawful purpose down that part of any stream in the State of Wyoming where the records of the state engineer for the ten years preceding such floating show that part of the stream to have had an average flow of water for the month of July exceeding 1,000 cubic feet per second, and it shall be unlawful to obstruct or prevent such use of such stream, except only so far as may be necessary for the protection of installations now existing or hereinafter ordered constructed by authority of the state board of control in furtherance of the beneficial uses of water; and providing further, that nothing herein shall be construed as preventing such fencing by those invested with property rights and the enjoyment thereof as shall not interfere with such

floating. It shall be unlawful for any person floating any stream to go upon, shoot over or into, except with the permission of the owner of such property, or damage or litter property on either side of the waters of such stream. In enforcing this act [§§ 41–527, 41–528], the records of the state engineer shall be conclusive in any trial in any court of the State of Wyoming in determining the flow of any stream. (Laws 1959, ch. 205, § 1.)"

After the passage of this legislation, the intervening parties filed their motion for summary judgment. This was denied by the court which granted the intervenors an exception. Thereafter the matter being submitted on stipulation of facts and arguments as to applicable law, the court found there was' a justiciable controversy and a class action for a declaratory determination of the legal rights, duties and obligations of the parties; found generally for the plaintiff and intervenors and against the defendants; then declared:

"* * * that the Plaintiff, and all others similarly situated as a class and the Intervenors, have the public rights and privilege of using the bed, channel and water of the North Platte River as it flows through the lands of the Defendants for the following purposes, and that the Defendants shall not fence or use said bed and channel, or any part thereof, so as to interfere with any of the following public purposes to-wit:

"(a) The right to fish from a boat, or while wading or walking, so long as those exercising the right stay in and upon the river bed or well-defined channel, and have the proper license and permission of the State of Wyoming;

"(b) The right to walk for any lawful purpose in and upon said channel or bed;

"(c) The right to boat and float on the water in and upon said channel;

"(d) The right to hunt in and upon said bed and channel when hunting is permitted by the State and within the licensed authority given by the State.

"It is, further ordered that said public rights of the Plaintiff, and others similarly situated, shall not embrace the right to camp within and upon said bed and channel or use the same for recreation other than enumerated above.

"It is, further, ordered, adjudged and decreed that any part or parts of Chapter 205 of the Session Laws of Wyoming, 1959, which limit or prohibit the exercise by the Plaintiff of the rights above mentioned is unconstitutional and, therefore, void and of no effect upon the public rights enumerated herein."

From this judgment the intervenors appeal "because Ch. 205, S.L. of Wyoming, 1959, is constitutional and determines the rights of the parties," and because the order denying intervenors' motion for summary judgment was erroneous. The defendants also appeal, but from the whole of the judgment, and they designate the complete record and all the proceedings and evidence in the action for inclusion in the record on appeal. This embodies the pleadings of the parties, stipulations, the unchallenged representations of the intervenors' brief in support of their motion for summary judgment, uncontradicted affidavits submitted in connection therewith, and a brief filed by Wyoming Wool Growers Association and Wyoming Stock Growers Association as friends of the court.

The admitted facts as exhibited by the complaint are: Defendants own land through which the North Platte River flows; at intermittent periods the river can float canoes, rowboats, outboard motors and other floating craft capable of carrying as many as six people; in the month of August and until spring run-off, craft carrying people and drawing more than one foot of water cannot be floated, with minor exceptions, i. e., short stretches or reservoirs; craft drawing less than one foot of water can be floated carrying people until about the middle of October when freezing occurs; from early days until 1940, the river was used commercially for floating logs, ties and timber; plaintiff can enter the river by boat from lands of a national forest, by boat or wading, or from a point where the county road right of way crosses the channel, or by boat or wading from lands of other private owners, and the channel may sometimes be entered between high water marks by walking.

Plaintiff, for himself and the public, claims the right to use the bed and channel of the river and its waters to fish under license of the State, either from a boat floating upon the river waters, or while wading the waters, or walking within the well-defined channel of the stream; to walk in and upon the river's channel; to boat and float upon the waters of the river; to hunt under State license in and upon the channel of the river; and to camp within and upon the channel of the river and use it for recreation. Plaintiff also claims neither of the defendants owns the bed of the river, but if they do hold title to the channel, that title is subject to the paramount right of the public to use the channel for the enumerated purposes, and defendants may not legally fence the channel or otherwise obstruct it so as to prevent such uses by the public; that the water of the river is the property of the State and that the State has the duty to equally guard all interests in the use of the water as provided by Art. 1, § 31, and Art. 8, § 1, Constitution of Wyoming; that by virtue of the State's ownership of the water, plaintiff and others similarly situated have the right to use the water and the bed of the river for the public purposes enumerated; that defendants denied plaintiff and all other persons the right to use the bed or channel of the river; that defendants fenced the same and claimed they could expel and remove by force, if necessary, the plaintiff and others who attempted to use the bed and channel of the river without first obtaining defendants' consent; that defendants did not permit plaintiff to exercise his claimed

rights and will not permit plaintiff's exercise of the same unless restrained; that the question presented is one of great public interest and as such should be determined as provided by Ch. 3, Art. 58, W.C.S.1945 (now §§ 1-1049 to 1-1064, W.S.1957, Uniform Declaratory Judgments Act); and that the Attorney General should intervene.

The defendants' answer in substance denies the river is navigable in fact, although defendants admit that certain small craft have floated and do float upon it, and denies the plaintiff has any of the rights or privileges alleged in the complaint.

Defendants allege that the use of small boats during part of the year upon the river does not constitute navigation of the river, nor does the floating of logs, ties and timber establish the river as being navigable; that they have the right to fence the river channel upon their own land and have the right to use the channel in their own business; that they have the right to deny plaintiff and others all uses, privileges and rights claimed by the plaintiff; and that they will not permit fishing, camping, boating, or other similar use of the river channel within their lands, nor will they permit the use of the surface of the river's water as it passes through and across their land except with their permission.

Defendants further allege they hold the fee title to their respective lands and that neither of them can profitably operate his ranch if plaintiff prevails; that other landowners upon rivers, lakes and reservoirs will be vitally affected by the outcome of the action; and that they have always assumed and believed their properties were free from trespass by others.

The plaintiff and defendants stipulated that the complaint accurately and completely states the material facts; that the conclusions of law therein are not admitted; and that those conclusions of law constitute the issues in the case.

The intervenors' answer alleges that from time immemorial the waters of the North Platte River have been used continuously for transportation by shallow draft craft and of logs, etc.; that in 1869 the river was declared by law to be a public highway (repealed however by Ch. 42, Laws of Wyoming, 1901); that the water is now State property; that during the winter the river is dangerous to livestock because of freezing and thaw, and in the spring the river is dangerous to livestock because of floating trees, logs, etc.; that many ranchers fence along the river margins; that from early summer to about September 1, the water volume permits boating, but after September 1, the water diminishes, boating is not feasible, and cattle may venture into the river with safety; that some ranchers fence across the river to prevent cattle straying, but some fences are destroyed in the winter by ice and are washed out in the spring by high water; that one defendant in 1957 erected a barrier across the river not connected with any fence controlling livestock, and declared he intended to prevent use of the river by boats and fishermen; that this barrier was destroyed and washed out; that this action was brought by plaintiff with the advice, consent, counsel and collaboration of defendants; that intervenors contend only that they and the public are entitled to continue to float on waters of the river without hindrance and to catch fish owned by the State, having due regard and respect for the rights of adjacent landowners. The intervenors then describe their personal and business activities and the interests they represent, claiming that the action between plaintiff and defendants presents fictitious issues and misrepresents real issues between fishermen and ranchers on the river; allege the title of defendants to the lands involved is subject to reservations and restrictions of record, and as provided by the laws of the State and of the United States; that both the waters of the river and the fish in those waters belong to the State; that the public has the right to the use of the waters for boat fishing; and that it is the duty of the State to equally guard all the various interests of the public in those waters. Attached to the intervenors' motion for summary judgment

were a number of affidavits which we deem to have no material significance, with the exception of that of the State Engineer certifying that the average flow of water for the month of July for the preceding ten years at Saratoga, Wyoming, gauging station on the North Platte River was 1,308 cubic feet per second, and other affidavits stating that the river flow at the point certified by the State Engineer was substantially the same flow as that of the river where it crossed the defendants' lands.

It is our understanding that a fair summary of the respective position of the parties is as follows: The plaintiff insists the river is navigable because it will float craft, and, therefore, the bed of the river is public property and can be used by the public between its high water marks for any purpose of which it is susceptible. The Attorney General denies the river is navigable, but asserts it may be used for floating of certain craft and for fishing and other lawful purposes. Defendants contend no one except themselves has any rights in the river as it passes through their properties. The intervenors claim for themselves and the public only the right to float upon and fish within the river. The wool growers and stock growers maintain no one has a right on streams which pass through properties in private ownership except the proprietors of the land.

There are certain sections of the State and Federal Constitutions which counsel deem have bearing upon the various questions involved here, as well as a host of Wyoming statutory provisions. Those having important significance are § 1 of the Fourteenth Amendment to the Federal Constitution relating to due process and equal protection of law, and the following sections of the Constitution of Wyoming: Art. 1, § 6, relating to due process of law; Art. 1, § 7, denying there is absolute arbitrary power over property; Art. 1, § 10, right of accused to demand the nature and cause of the accusation; Art. 1, § 31, giving the State the control of waters and requiring it to equally guard all various interests involved; Art. 1, § 34, requiring all laws of a general nature to have uniform operation; Art. 3, § 27, prohibiting certain special laws; Art. 8, § 1, declaring the State's ownership of all waters within its boundaries; and Art. 13, § 1, relating to municipal corporation classification. Applicable statutes will be referred to as may be necessary.

The criticized judgment being declaratory of the law under a particular set of circumstances, the court was entitled to and undoubtedly did consider every factual matter which was submitted. This included not only matter contained in the pleadings, but also that exhibited by affidavits and stipulation, even though not expressly admitted or joined in by all parties. This is because such additional facts were not challenged or contradicted, and, hence, no genuine issue of fact was presented which required resolution.

■ The "Brief Amicus Curiae of Wyoming Wool Growers Association and Wyoming Stock Growers Association" advises the court that the members of those organizations have always contended the owner of lands through which flows a stream nonnavigable in the Federal sense may deny fishermen, hunters, wanderers, and campers the right to use his property, and although the Constitution declares all water is the property of the State, that provision is limited to right of appropriation for irrigation and other beneficial uses; that while the Legislature has provided for appropriation for water for those purposes, it has not declared streams stocked with fish to be "public ways" nor regulated that type of use and such legislation is a condition precedent to the claimed use of waters. Aside from the fact that at the time this argument was advanced, Ch. 205, S.L. of Wyoming, 1959, §§ 41–527, 41–528, W.S.1957, was enacted and purported to declare the State's waters might be used for floating transportation, as early as 1909, the Legislature enacted Ch. 68, § 2, S.L. of Wyoming, 1909 (substantially the same as § 41–3, W.S. 1957), which gives recognition that transportation is a use to which waters may be put in the language following:

"Water rights are hereby defined as follows according to use: Preferred uses shall include rights for domestic *and transportation purposes* * * *." (Emphasis supplied.)

Additionally, Ch. 89, Laws of Wyoming, 1901, and Ch. 16, S.L. of Wyoming, 1903, now § 41–224, W.S.1957, regulated the driving or floating of logs, timber or lumber down or upon any stream in the State, without reference to its being navigable or nonnavigable. These statutes indicate the Legislature was aware that, without regard to their being navigable or nonnavigable in the Federal sense or any other concept of navigability, its waters were usable for purposes other than irrigation, consumption, power or mining, and the waters might be used for transportation by flotation. So it would seem that subject to whatever statutory limitations may be imposed by the State on such use, or by the Federal government when interstate or international rights are involved, the actual usability of the waters is alone the limit of the public's right to so employ them.

■ Nothing is found in either our State Constitution, the Act of Congress admitting the State to the Union, or any subsequent act of Congress, which limits the kind or type of use the State may make of its waters.

■ We understand that "navigability in the Federal sense" means the capability or susceptibility of waters, in their natural condition, of being used for navigation in interstate or international commerce, ánd navigability in any other sense may mean any one of a variety of definitions given navigability by either of the several states of the Union.

■ There is an element of paramount control by the Federal government with respect to navigable waters, but that superior right exists only where navigable waters may be used in either interstate or international commerce. This was made clear in City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 334, 78 S.Ct. 1209, 1217, 2 L.Ed.2d 1345, 1353, the court saying:

"It is no longer open to question that the Federal Government *under the Commerce Clause of the Constitution* (Art. I, § 8, cl. 3) has dominion, to the exclusion of the States, over navigable waters of the United States. * * *" (Emphasis supplied.)

See also 65 C.J.S. Navigable Waters § 10a, pp. 61, 62, and cases cited.

■ However, except when so used or available for use in interstate or international commerce, the exclusive control of waters is vested in the state, whether the waters are deemed navigable in the Federal sense or in any other sense. See 65 C.J.S. Navigable Waters § 10b, pp. 63–65. It follows the state may lay down and follow such criteria for cataloging waters as navigable or nonnavigable, as it sees fit, and the state may also decide the ownership of submerged lands, irrespective of the navigable or nonnavigable character of waters above them. See Donnelly v. United States, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820, Ann.Cas.1913E, 710, rehearing denied 228 U.S. 708, 33 S.Ct. 1024, 57 L.Ed. 1035.

All of counsel have dealt extensively with the question of navigability or nonnavigability of the river and rights incident thereto as it passes through or across defendants' lands. We have carefully examined the great volume of authorities referred to or cited by counsel and have found them to be very instructive. However, in the view we take, it would serve no purpose to make exhaustive reference to or give extensive quotations from them, as this would only serve to exhibit the differences between Federal views on what constitutes navigability and the varieties of views on the subject entertained by the courts of different states. Furthermore, any attempt to improve upon or further elaborate the question would probably not be fruitful.

Although we are not prepared to say the criteria used by courts of different states and of the United States to determine navigability of waters and ownership of land beneath them were either unwise or un-

sound when used to meet the special circumstances presented in their respective jurisdictions, if we are to observe the existing constitutional and statutory law of this State, the great majority of those decisions are of limited helpfulness. The mere capability of a stream to float a single commercial crosstie, which has been used at times as a somewhat extreme test determining navigability and consequent ownership of land underlying the water, does not solve the question of whether waters in this State, which are capable of being occasionally used to float acceptable craft, may be so used even if they are considered as being nonnavigable and are upon, pass or flow over and across lands claimed in private ownership.

The basic reason for using navigability as a classification was to designate certain waters as public and others as private, and to give to public authority, not only ownership and control of navigable waters, but also ownership and control of their beds and channels while leaving in private ownership and control the beds and channels of nonnavigable waters. In the instant case, however, this test is rendered unnecessary to establish the ownership of the waters, because by our Constitution and its Congressional approval, the title of all waters of the State is placed in public ownership. This makes apropos the statement in Ne-Bo-Shone Ass'n v. Hogarth, D.C. Mich., 7 F.Supp. 885, 889, affirmed 6 Cir., 81 F.2d 70:

> "Because some waters are public, certain rights attach thereto. These rights are not limited by the test by which the nature of the waters is determined but to the rights incident to the characterization as public of the stream or body of water."

Public ownership of the bed and channel of navigable streams, as well as control of their waters, seems to have been considered necessary in order to forestall interference with the commercial navigation of which they were capable. However, riparian ownership to the center of nonnavigable streams need not necessarily materially interfere with and does not necessarily prevent the State's use of waters for purposes for which they are adaptable and to which they may be put for the equal benefit of all members of the public. Irrespective of the ownership of the bed of a stream or of land upon which there are waters or over which waters flow, the State's right to control and use its own waters as it sees fit is paramount, except as it may be shown the title of the Federal government to such waters was incumbered when that title passed from the Federal government to the State upon its admission to the Union. Thus the right of every person over or through whose lands the waters belonging to the State are found or flow, and whose title to waters does not antecede that of the State, is subject to the State's right to use and control its waters as it sees fit. The test of navigability does not determine other uses to which the State may put its waters even though navigability would determine the title to the land underlying them.

In a late Ohio case (1959), Mentor Harbor Yachting Club v. Mentor Lagoons, Inc., 170 Ohio St. 193, 163 N.E.2d 373, 375, it was said:

> "The division of watercourses into navigable and nonnavigable is merely a method of dividing them into public and private, which is the more natural classification. * * *"

But such a division or classification of watercourses, while determining title to lands beneath navigable waters, does not necessarily limit, destroy or curtail the public's right to use nonnavigable waters nor prevent the public's floating in or upon those waters and fishing for fish planted and propagated therein by the State, so long as such uses do not unnecessarily trespass upon lands or properties which are in private ownership and so long as the State does not curtail such uses. Navigability is not the only touchstone by which waters become public. The public may receive title to them by grant and in the manner Wyoming became possessed of all waters within the State.

Article 8, § 1, of our Wyoming Constitution declares the waters of all natural streams, springs, lakes, or other collections of still water, within the boundaries of the State, are the property of the State. By its Act of Admission, approved July 10, 1890, 26 Stat. 222, ratifying our State Constitution, Congress gave express approval to that declaration regarding the State's ownership of waters. Merrill v. Bishop, 69 Wyo. 45, 237 P.2d 186; Id., 74 Wyo. 298, 310, 311, 287 P.2d 620, 624; Mitchell Irr. Dist. v. Sharp, 10 Cir., 121 F.2d 964, 967. This court has interpreted the State's title to the waters to be one of trust for the benefit of the people. Farm Investment Co. v. Carpenter, 9 Wyo. 110, 61 P. 258, 50 L.R.A. 747, 87 Am.St.Rep. 918; Willey v. Decker, 11 Wyo. 496, 73 P. 210, 100 Am. St.Rep. 939; Merrill v. Bishop, supra; Lake De Smet Reservoir Co. v. Kaufmann, 75 Wyo. 87, 292 P.2d 482. See also Ne-Bo-Shone Ass'n v. Hogarth, D.C.Mich., 7 F.Supp. 885, affirmed 6 Cir., 81 F.2d 70.

All parties seem to recognize that if a river is nonnavigable the bed and channel of the stream belong to the riparian owner. No one seriously disputes that the waters themselves belong to the State and are held in trust by it for the benefit of the public. So if the river is nonnavigable we would have a clear case of divided ownership of the river as an entity, because title to the bed and channel would be in the riparian owner and title to the waters is in the State. Whether this be considered as a conflict of interest or an overlapping of ownerships is of no particular importance. At all events, it would be desirable that each owner be accorded maximum incidents of ownership with minimum obligation upon the other.

The navigable or nonnavigable classification of waters does not affect the State's ownership of its waters nor lessen any use to which they may be put by the public, so long, in the case of waters navigable in interstate or international commerce, as that use leaves their flow or presence unimpaired and so long, in the case of nonnavigable waters, as such use is not prohibited by the State. There seems to be no considerable difference between dividing the ownership and use of lands beneath waters from the ownership and use of waters upon or flowing over or across that land than there is in the horizontal division in land ownership such as not infrequently occurs in ownership of surface and subsurface areas. Even where land is divided vertically there are certain obligations or duties placed upon each owner in order to enable the other to make use of and enjoy that which is his. So it is that while the right of ingress and egress upon and over the surface accompanies subsurface ownership where there is a horizontal division, there also is a similar right of ingress and egress across adjacent lands where no other access is available, as well as a restrainable right of nuisance use of adjacent lands. Also, it may be that a full use of lands underlying waters may entitle their owner to some type of reasonable easement in the State's waters. In each instance the enjoyment of rights incident to separate ownership may require easement in the property of another.

 The title to waters within this State being in the State, in concomitance, it follows that there must be an easement in behalf of the State for a right of way through their natural channels for such waters upon and over lands submerged by them or across the bed and channels of streams or other collections of waters. Callahan v. Price, 26 Idaho 745, 146 P. 732; Johnson v. Johnson, 14 Idaho 561, 95 P. 499, 24 L.R.A.,N.S., 1240; Nelson v. Robinson, 47 Cal.App.2d 520, 118 P.2d 350; Id., 73 Cal.App.2d 263, 166 P.2d 76; Scott v. Lattig, 227 U.S. 229, 33 S.Ct. 242, 57 L.Ed. 490, 44 L.R.A.,N.S., 107; Smith v. Long, 76 Idaho 265, 281 P.2d 483; 65 C.J.S. Navigable Waters § 93b(1), pp. 205, 206. The waters not being in trespass upon or over the lands where they naturally appear, they are available for such uses by the public of which they are capable. When waters are able to float craft, they may be so used. When so floating craft, as a necessary incident to that use, the bed

or channel of the waters may be unavoidably scraped or touched by the grounding of craft. Even a right to disembark and pull, push or carry over shoals, riffles and rapids accompanies this right of flotation as a necessary incident to the full enjoyment of the public's easement. As early as 1874, Michigan courts recognized that where a river was capable of floating logs, that right of flotage was but a right of passage, including only such rights as are incident to that right and necessary to render it reasonably available. See Grand Rapids Booming Co. v. Jarvis, 30 Mich. 308, 319. In 1909, Missouri, in McKinney v. Northcutt, 114 Mo.App. 146, 89 S.W. 351, 355, did likewise and later in Elder v. Delcour, 241 Mo.App. 839, 263 S.W.2d 221, reversed 364 Mo. 835, 269 S.W.2d 17, 47 A.L.R.2d 370, reaffirmed that principle. On the other hand, where the use of the bed or channel is more than incidental to the right of floating use of the waters, and the primary use is of the bed or channel rather than the floating use of the waters, such wading or walking is a trespass upon lands belonging to a riparian owner and is unlawful. Such trespass cannot be made lawful either by legislative or judicial action. Thus the use of waters for the floating of which they are capable and uses incidental thereto, as distinguished from unlicensed use of the land beneath them, is within the public's right unless made unlawful by statute. Except as herein specified, to use the bed or channel of the river to wade or walk the stream remains an unlawful trespass. This disagrees somewhat with Munninghoff v. Wisconsin Conservation Commission, 255 Wis. 252, 38 N. W.2d 712; Elder v. Delcour, supra; and perhaps with some other authorities.

Notwithstanding that the Elder-Delcour case was decided with reference to what was said to be its own peculiar facts, those facts are so closely paralleled in the matter before us as to make them quite helpful here. There the river in question was held to be nonnavigable, notwithstanding it could be floated by canoes, rowboats and other small craft, and in the past had been used for floating and transporting logs and timber. The stream was well stocked with fish and was heavily fished by sportsmen, both by wading and floating and from the banks. Also access to the river could be gained from a public road and at points where it crossed privately owned lands. It was claimed the public had the right not only to float by craft upon the waters of the river and to leave the river and carry or drag around obstructions, but also the right to wade the river and use its banks for camping and recreation.

Under our conception of the law, if we hold the river in question here is nonnavigable, then title to the bed or channel of the stream will be in the riparian owner. By Constitutional edict, title to all waters is in the State. Under such circumstances the use of waters for floating, with incidental use of their beds and channels, cannot be interfered with or obstructed by the riparian owner. However, in using the State's waters for floating, the public is not privileged, except as incidental to such use, to violate other property rights of riparian owners. Where such divided ownership occurs, "the landowner and the public have certain reciprocal rights, which may be enjoyed without the destruction of the other." Charnley v. Shawano Water Power & River Improvement Co., 109 Wis. 563, 569, 85 N.W. 507, 509, 53 L.R.A. 895. We are not inclined to go as far as the Missouri court when it permitted wading or walking upon the bed or channel of the river or use of its banks for recreation. Perhaps the reason for our difference with the Missouri court is seated in the fact that our conclusions are based solely upon Wyoming's Constitutional declaration that all waters within its boundaries belong to the State, while the court in Missouri, which state does not have such an express constitutional declaration as ours, may have been largely influenced by other considerations.

■■■ Streams in their natural state, such as that described by the factual matter appearing in the record before us, although capable of intermittent floating of craft for recreational use and for small

commercial use in the floating of ties, logs, and timber, are nevertheless unsuited for navigation in interstate or international commerce and are not of such economic value for transportation as justifies their being classified as navigable waters, thereby taking from riparian proprietors the title and ownership of the bed and channel of the river where it flows by, through, over, across, or upon their lands. So we must hold the portion of the river here in question is nonnavigable and that its bed and channel are the property of the riparian owner. This conclusion is fortified by the fact that the use to which the waters of the river have been put in the past to seasonably float logs and timber and certain small craft by which various activities, such as fishing, hunting, pleasure, etc., may be continued by the public's using only the waters of the stream themselves and without any but minor and incidental use of the lands beneath them.

 Irrespective of the ownership of the bed or channel of waters, and irrespective of their navigability, the public has the right to use public waters of this State for floating usable craft and that use may not be interfered with or curtailed by any landowner. It is also the right of the public while so lawfully floating in the State's waters to lawfully hunt or fish or do any and all other things which are not otherwise made unlawful. See Ne-Bo-Shone Ass'n v. Hogarth, D.C.Mich., 7 F.Supp. 885, affirmed 6 Cir., 81 F.2d 70.

Although Ch. 205, S.L. of Wyoming, 1959, now §§ 41–527, 41–528, W.S.1957 (1959 Supp.), was enacted after the commencement of this litigation, a mere declaration of the law's application respecting the relative rights of the public and riparian owners of the river, before it became effective, would be valueless if the Act in any way affected those relative rights. We should, therefore, examine the new law, first, to determine its constitutionality, and if found not to transcend constitutional law, then to ascertain what, if any, change it makes in the rights involved.

Plaintiff-appellee suggests that "floating" is used as an opposite to wading or walking. We, therefore, assume he concluded the Act does not affect any rights of those who wade or walk the river, because the Act is silent respecting them. With this conclusion we can agree without conceding the right to wade or walk exists.

In condemning the Act as void for ambiguity, lack of uniformity and vagueness, this appellee cites In re Newbern, 53 Cal. 2d 786, 3 Cal.Rptr. 364, 350 P.2d 116, 120, 121, 123, as follows:

"The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well established element of the guarantee of due process of law. 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids. * * * "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." ' Lanzetta v. [State of] New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888; see also Connally v. General Const. Co., 269 U.S. 385, 391, 46 S. Ct. 126, 70 L.Ed. 322. Such also is the law of the State of California. People v. McCaughan, 49 Cal.2d 409, 414, 317 P.2d 974."

The court continued 350 P.2d at page 123:

"* * * The first aspect of the difficulty is that citizens are not sufficiently warned by vague language as to what course of conduct is denounced. Secondly, the court is given insufficient standards by which to judge the defendant's conduct. Consequently, each judge and jury is free to define the crime in any manner that it sees fit, giving rise to the dangers of imposing ex post facto punishment on the defendant, having the jury find the

law as well as the facts and giving the statute the effect of a bill of attainder in each particular case.

\* \* \* \* \* \*

"Finally, we might point out that the Constitution of the State of California commands that all general laws be of uniform operation. Const., Art. I, § 11. That provision will not tolerate a criminal law so lacking in definition that each defendant is left to the vagaries of individual judges and juries.

\* \* \*"

Counsel also likens the Newbern holding to what this court had to say in Eastwood v. Wyoming Highway Department, 76 Wyo. 247, 301 P.2d 818, claiming that although a portion of our Driver License Law was held unconstitutional for improper delegation of legislative power to an administrative office, this court indicated that the ambiguity of the statute would also render it unconstitutional.

 It seems to us Chapter 205 is fraught with indefiniteness, leaving uncertain legislative intent and impregnating the Act with ambiguities.

In substance the Act says persons and property may only float by boat, canoe and raft down a stream where for ten years preceding the stream had an average flow for July exceeding 1,000 cubic feet per second. It then makes it unlawful to obstruct or prevent such use except to protect present and future authorized installations; provides that those invested with property rights may fence, so long as the fencing shall not interfere with the prescribed floating; makes it unlawful for any person floating to go upon, or shoot over or into, or damage or litter the property on either side of the water; and provides a fine of $100 for violation of the Act.

One meaning which may be given to the word "only" would merely limit the means and methods by which persons and property may be floated. Another meaning would be that floating downstream was permitted while floating upstream was not

sanctioned. A boat, canoe or raft is floating, whether it goes upstream or downstream, even though the upstream progress requires use of oars, motors, poling, sails, pushing, or other means of propulsion.

If the Act be considered as prohibiting the floating of persons or property in streams of the specified flow in any other manner than by boat, canoe or raft, it excludes the floating in such streams of any tie, log, or other material unless made into some kind of raft, yet in streams of less flow, it would leave untouched their use for tie, log and timber drives.

Again the Act might be construed as prohibiting all types of floating use in streams unless the stream meets the flow specifications prescribed, and, if so, is it intended to repeal by implication § 41–224, W.S.1957, which provides for floating of certain materials without regard to average flow?

In fact, the Act, as far as flotation goes, does not in terms either permit or prohibit anything. If the statute is said to grant a permissive right not theretofore enjoyed by the public, the word "only" might fairly be construed as a word of limitation upon the grant. If, however, it is taken to have the connotation of prohibition, it would imply the previous existence of a right which was being denied, at least in part, by the statute. That which is made unlawful is, of course, prohibited by law. The proscriptive fencing and going upon, shooting over or into property, and the damaging or littering of property while floating are made unlawful, and consequently, prohibited and properly made subject to penalty. But in the balance of the Act, relating to floating upon the river, nothing is expressly commanded, prohibited or made unlawful. If the Act merely limits floating to being exercised in a certain way, floating in any other way violates the Act and subjects to penalty, even though that is not made unlawful. A person charged in the language of the statute with violation of that part of the Act would be at loss to know exactly with what crime he was being charged. Would it be because he had

floated in some manner other than by boat, canoe or raft; or that he had floated up or otherwise than down the river; or that he floated in the river when it failed of having averaged the prescribed flow of water?

Whatever view is taken as to the meaning of the word "only" in its context, the result must arise solely by implication, construction or interpretation. There is no plain, clear, unambiguous meaning expressed by it which gives that certainty required in criminal statutes. Nevertheless, the Act is definitely intended as a criminal law for it makes unlawful the obstruction of "such" stream so as to prevent its use, except so far as may be necessary to protect existing installations and authorized future installations. It also makes unlawful certain acts by persons when floating any stream. The penalty prescribed by the Act is to be inflicted upon all persons who "violate" the Act, whether such violation consists of doing that which is made unlawful, or for the doing of a thing which may be considered as being impliedly prohibited, or for going beyond the permission which may be thought to be impliedly granted.

If the word "only" is taken as a limitation upon floating, the Act is violated and subjects to penalty when floating occurs in any other manner even though that which is done is neither prohibited nor made unlawful. But this statutory definition of the limit of a right does not in itself make going beyond that limit a crime and subject the offender to criminal punishment. Floating in or upon the waters of a river, the flow of which does not meet that which is specified, is not expressly prohibited or made unlawful, nor is floating up the river or merely remaining afloat or floating by some other means made unlawful or prohibited. So the Act may be violated in those respects without committing a crime or breaching the law. In Commonwealth v. Galloway, 203 Ky. 102, 261 S.W. 887, 888, where a statute provided that a failure to comply with any of its provisions was a misdemeanor, the court held:

"* * * In a penal statute the mere granting of the privilege to do a thing in a particular way may not be construed into a prohibition against doing that thing in any other way, especially when the whole act contemplates the doing of that thing in some way."

When our Act says such violation is to be penalized, it is clearly unconstitutional, as it assumes to punish that which is not prohibited, unlawful or made criminal. This in itself not only makes that portion of the Act unconstitutional, but as the statute is penal and to be strictly construed, we must hold Ch. 205, S.L. of Wyoming, 1959, unconstitutional in toto. McFarland v. City of Cheyenne, 48 Wyo. 86, 42 P.2d 413; Annotation, 104 A.L.R. 1095.

If we had any doubt about the unconstitutionality of the 1959 law, it would seem to be resolved by pronouncements in State v. A. H. Read Co., 33 Wyo. 387, 401, 402, 240 P. 208, 212, 213. There it was argued that nothing was declared unlawful by the statute, and nothing penalized, except a violation of the provisions of statute which merely declared a legislative limitation of the time of service upon public works without expressly commanding or prohibiting anything. After pointing out that the Federal Supreme Court had held

"* * * that a penal statute, prescribing no certain standard of conduct, violates the fundamental principle of justice embodied in the conception of due process of law, and is void because violating the provisions of the Fifth Amendment to the Constitution of the United States declaring that no person shall be deprived of life, liberty, or property without due process of law, and the provision of the Sixth Amendment declaring that in all criminal prosecutions the accused shall enjoy the right to be informed of the nature and cause of the accusation; * * *"

this court said:

"* * * And state laws thus uncertain are likewise held to be void

upon the same principle, as violating the due process of law clause and the other related provisions of the Fourteenth Amendment, which applies to state governments. * * * "

It then noted that because of the absence from the statute of the necessary expressions of command or prohibition, a Federal constitutional question was presented and our own State constitution provided that in all criminal prosecutions the accused had the right to demand the nature and cause of the accusation (Art. 1, § 10, Wyoming Constitution), this would be denied him in the absence of sufficient certainty in the statute under which he was being prosecuted, and said at 240 P. 212–213:

"* * * no one can be lawfully convicted of a * * * misdemeanor, unless the act charged, if not a crime at common law, is clearly denounced or penalized as a crime by statute. So it is well settled that criminal statutes are to be strictly construed, which means that they are not to be enlarged by implication or extended by inference or construction * * *."

Of the rule thus stated, the court further said it

"* * * requires a sufficient degree of certainty in a criminal statute, that will place it outside the necessity of judicial determination, through mere implication or construction, of who or what acts are punishable under it. * * *"

And the court quoted with approval at 240 P. 213:

"Thus in U. S. v. Reese, 92 U.S. 214, 23 L.Ed. 563, it is said:

" 'If the Legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime. * * * It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government.' "

The case now before us is thus placed squarely within those pronouncements of State v. Read, supra, because it would be only by judicial determination through implication or construction that other than certain types of floating would be prohibited and made unlawful so as to subject an accused to the penalty provided if such floating occurred.

The patents from which defendants' titles are deraigned do not exclude or reserve therefrom the bed or channel of the river. The most that is claimed to be contained in the patents involved is that they were granted subject to any vested and accrued water rights for mining, agricultural, manufacturing or other purposes, and rights to ditches and reservoirs used in connection with such water rights. 43 U.S. C.A. § 661. We do not understand these reservations to withdraw from the patent the beds or channels of rivers.

Furthermore numerous decisions support our view that the title to the nonnavigable waters belong to the riparian owners.

"* * * Title to the beds of the nonnavigable rivers and streams within the state remains in the United States, or in those persons who have received title from the United States. * * *" 93 C.J.S. Waters § 71, p. 748.

See also State v. Brace, 76 N.D. 314, 36 N.W.2d 330; United States v. State of Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed 1267; United States v. State of Utah, 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844; United States v. Champlin Refining Co., 10 Cir., 156 F.2d 769, affirmed 331 U.S. 788, 67 S. Ct. 1346, 91 L.Ed. 1818, rehearing denied 331 U.S. 869, 67 S.Ct. 1727, 91 L.Ed. 1872; Aladdin Petroleum Corp. v. State ex rel. Com'rs of Land Office, 200 Okl. 134, 191

P.2d 224; Luscher v. Reynolds, 153 Or. 625, 56 P.2d 1158; Ozark-Mahoning Co. v. State, 76 N.D. 464, 37 N.W.2d 488.

The question presented here is not that of creating a new public right nor even of giving initial recognition to an unused public right. We are dealing with a use long enjoyed by the public which is properly theirs, but which is now sought to be denied them.

■ The intervenors' contention that there is no justiciable issue and that this is not a class action is without merit. The plaintiff not only claimed a right and attempted to indulge it, but was prevented from doing so by the acts of the defendants. Thereby a real justiciable issue arose. It provided a real dispute, not a moot one. Under the facts submitted we are also convinced the litigation is properly considered as a class action affecting the rights of the public generally.

Intervenors' further complaint that their motion for summary judgment was improperly denied, while possibly having some merit, is at least subject to considerable doubt, especially as it was predicated upon a statute which is held to be unconstitutional. In any event, the substantial result sought by the motion is accomplished by our holdings herein.

In conclusion, while we recognize the legislative right to regulate within constitutional limits the floating, as well as other uses of public waters, until such time as regulations are promulgated we hold: That the portion of the river in dispute is nonnavigable; that its riparian owners have title to the bed and channel of the river, but that this title is subject to an easement for a right of way of the river's waters in their natural channel through, over and across defendants' lands; that the waters of the river are the property of the State and are held by it in trust for the equal use and benefit of the public; that the waters of the river may be used by the public for floating usable craft therein or thereon and for transporting in such usable craft persons or property; that as an incident to the full enjoyment and use of the State's easement for its waters over and across the lands held in private ownership, persons so floating in usable craft may, when necessary, disembark and walk, or wade upon submerged lands in order to pull, push, or carry craft over or across shallows, riffles, rapids or obstructions; that while so floating in usable craft, the public may fish or hunt or do any and all other things which are not otherwise made unlawful, but that the State is without power to authorize the violation of any property rights of riparian or other owners except as incident to the full exercise of easement to which property may be subject; that the waters of the river, if capable thereof, may also be used for transporting logs, ties, timber and other material when permitted by State law; that riparian owners of lands bordering upon or through which the river flows may not in any manner obstruct the flow of the river's waters so as to interfere with or prevent the free passage of any craft used commercially or for recreation or for floating ties, logs, or timber; that Ch. 205, S.L. of Wyoming, 1959, now §§ 41–527, 41–528, W.S. 1957 (1959 Supp.), is unconstitutional as being vague, uncertain, ambiguous and subjecting to its penalty the violation of provisions of the Act which are neither made unlawful nor prohibited; and that the judgment appealed from must be reversed insofar as it permits unrestricted walking or wading in or upon the bed or channel of the river and that the judgment of the lower court be vacated in this respect.

The judgment is therefore reversed in part, and the cause remanded with direction to vacate so much of the judgment as is contrary to our holdings herein, and to make such further judgment as may be necessary to conform with this opinion.

Reversed in part and remanded with directions.