Argued and submitted March 5, 1999, decision of Court of Appeals and order of Workers' Compensation Board reversed, and case remanded to Workers' Compensation Board with instructions August 24, 2000

In the Matter of the Compensation of
Milan F. Shubert, Claimant.

Milan F. SHUBERT,
*Petitioner on Review,*

*v.*

BLUE CHIPS
and SAIF Corporation,
*Respondents on Review.*

(WCB 94-08858; CA A89283; SC S45040)

9 P3d 114

Meagan A. Flynn, Portland, argued the cause for petitioner on review. With her on the brief were Robert W. Pardington and Pozzi, Wilson, Atchison, LLP, Portland.

Julene M. Quinn, Salem, argued the cause and filed the brief for respondents on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, and Durham, Justices.**

---

** Kulongoski, Leeson, and Riggs, JJ., did not participate in the consideration or decision of this case.

GILLETTE, J.

**GILLETTE, J.**

In this workers' compensation case, claimant seeks review of a Court of Appeals' decision affirming the denial of his claim for an additional award of permanent partial disability (PPD) for a shoulder condition. The denial was based on a temporary administrative rule that assigned a value of zero to any disability attributable to certain surgical procedures that claimant had undergone. Claimant asserts that the rule is inconsistent with ORS 656.726(4)(f)(C),[1] the statute under which it was adopted. The Court of Appeals held that claimant's argument was not well taken. *Shubert v. Blue Chips*, 151 Or App 710, 951 P2d 172 (1997). For the reasons that follow, we reverse the decision of the Court of Appeals.

The following facts are supported by substantial evidence in the record. *See* ORS 183.482(8)(c) (setting out "substantial evidence" standard). Claimant injured his shoulder in a 1987 industrial accident and received workers' compensation benefits, including a PPD award. Several years later, claimant underwent a procedure called a "Bristow" surgery to repair his shoulder. After that surgery, claimant's original PPD award was adjusted upward to 17 percent.

Claimant continued to have problems with his shoulder. Eventually, claimant's treating physician determined that those continuing problems were being caused by a screw that had been inserted in claimant's shoulder during the Bristow surgery. The doctor recommended additional surgery to remove the screw. Claimant followed that recommendation and simultaneously filed an aggravation claim, which was closed by a July 30, 1991, determination order. That order did not award claimant any additional PPD.

Claimant sought reconsideration of the determination order and, in particular, its failure to award additional PPD. Claimant argued that he never had been compensated for the residual impairment attributable to the Bristow and

---

[1] At the time that this case began, the statute was numbered ORS 656.726(3)(f)(C). In 1999, the legislature renumbered the statute. Or Laws 1999, ch 876, § 9. No change was made to the text. We use the present statutory citation for convenience.

screw removal surgeries, and that the Director of the Department of Consumer and Business Services (the Director and the Department, respectively) should adopt a temporary rule evaluating that residual impairment under ORS 656.726(4)(f)(C).[2] That statute provides:

> "When, upon reconsideration of a determination order or notice of closure * * * it is found that the worker's disability is not addressed by the standards adopted pursuant to this paragraph, * * * the director shall stay further proceedings on the reconsideration of the claim and shall adopt temporary rules amending the standards to accommodate the worker's impairment."

Claimant enclosed a medical report by a Dr. Brenneke with his reconsideration request. The report assigned a residual impairment value of 10 percent to the two surgeries, without identifying or describing the nature of the impairment. Claimant also enclosed a letter from his treating physician concurring in Brenneke's report. However, without addressing claimant's request for a temporary rule, the Department affirmed its previous "no PPD" order.

A workers' compensation administrative law judge (ALJ) affirmed the Department's order, holding that a temporary rule was not required. However, on further review, the Workers' Compensation Board (Board) concluded that, under ORS 656.726(4)(f)(C), a temporary rule *was* required. Based on Brenneke's report, the Board stated in its opinion that "claimant ha[d] suffered permanent impairment as a result of the surgical repair of a compensable subluxing shoulder condition" and that the "surgical procedure and resulting impairment [had not] been addressed by the applicable standards." Accordingly, the Board remanded to the Director for the adoption of a temporary rule to address the residual effects of claimant's shoulder surgery.

On remand, the Director adopted a temporary rule that stated, in part:

> "This worker underwent Bristow repair and malleolar screw removal in the left shoulder. * * * Bristow repair of a

---

[2] ORS 656.726(4)(f)(C) modifies and further defines the authority granted to the Director by ORS 656.726(4)(f) to "provide standards for disabilities."

dislocated shoulder improves the function of the shoulder and reduces the chance of dislocation. Removal of the screw fixation device does not result in recognized loss of shoulder function. In this case, the impairment value for these procedures shall be a value of zero."

Claimant challenged that temporary rule before the Hearings Division, arguing that, under ORS 656.726(4)(f)(C), the Director could not adopt a temporary rule that assigned an impairment value of zero to the effects of his surgeries. To do so, claimant argued, effectively would ignore what claimant believed already had been decided by the Board—that the surgeries had resulted in impairment that must be "accommodated" under ORS 656.726(4)(f)(C). However, the ALJ and, later, the Board, held that it was for the Director to adopt disability standards under ORS 656.726(4)(f)(C) and that neither the Hearings Division nor the Board could "correct" the Director's actions in that regard. The Board held, moreover, that the temporary rule was not inconsistent with the statute:

"Here, pursuant to our remand order, the Director found that claimant's left shoulder [surgeries were] not addressed by the standards. Our order did not determine whether or not claimant had a rat[e]able impairment as a result of the surgery, but merely determined that the surgical procedure was not addressed by the Director's 'standards' * * *.

"As a result of our order, the Director promulgated a temporary rule * * * which addressed the surgery. Applying the temporary rule, the Director found that claimant was not entitled to an impairment value for the surgical procedure. This action was within the Director's authority pursuant to ORS 656.726([4)](f)(C)."

On claimant's petition for judicial review of the Board's decision, a divided Court of Appeals affirmed. The court's majority agreed with the Board that the Board had no authority to substitute its own views regarding disability standards for those of the Director. *Shubert*, 151 Or at 714-15. It also agreed that the Board had not found that claimant's surgery had resulted in permanent impairment and that the Director's rule, assigning the surgeries an

impairment rating of zero, was not inconsistent with the findings that the Board had made. *Id.* at 715-16. We allowed claimant's petition for review.

Before this court, claimant argues, as he did below, that a "zero" impairment rating inherently is contrary to the policy expressed in ORS 656.726(4)(f)(C). Taking his cue from the Court of Appeals' dissent, claimant focuses on the direction in ORS 656.726(4)(f)(C) that the existing rules be amended to "accommodate" the impairment at issue. Claimant explains that a zero impairment rule cannot be reconciled with the concept of accommodation, because such a rule essentially denies that any impairment or, at least, any impairment that also is a disability, exists.[3]

Claimant contends that the fact that the Director adopted a rule to address claimant's condition at all establishes that that condition is a disability and, therefore, a ratable impairment. That is so, claimant argues, because the Director is authorized to adopt a temporary rule only when the Director finds that the condition at issue is a disability, *i.e.*, an impairment that merits a disability award—and, by inference, a positive impairment value—that is not addressed by existing standards. Therefore, claimant concludes, a zero impairment rule is inherently inconsistent with ORS 656.726(4)(f)(C), because it denies the very fact under which the Director's authority to adopt a temporary rule under ORS 656.726(4)(f)(C) arose in the first place.

We are not persuaded by that logic. ORS 656.726(4)(f)(C) requires the Director to adopt a temporary rule when "it is found that a worker's disability is not addressed by [existing] standards." But "disability" cannot be "found" in the way that an ordinary fact would be found. Rather, disability is a legal conclusion that arises out of the medical fact of impairment in combination with pertinent legal criteria. *See Russell v. SAIF*, 281 Or 353, 357 n 4,

---

[3] The Court of Appeals' majority declined to address that particular point, stating that it had not been argued on review. *Shubert*, 151 Or App at 717 n 4. We disagree. Claimant argued to the Board and to the Court of Appeals that a temporary rule cannot, consistent with ORS 656.726(4)(f)(C), assign an impairment value of zero to a disability, the existence of which necessarily has been established as a precondition for adoption of the rule.

574 P2d 653 (1978) (law concerns disability that results from impairment, a medical concept); *see also* ORS 656.726(4)(f)(A) (criteria for evaluation of disability shall be permanent impairment modified by factors of age, education, and adaptability). If the Director concludes that the condition at issue is not an impairment (or, at least, not one that is entitled to a positive impairment rating), then the condition is not a disability and no temporary rule is required by ORS 656.726(4)(f)(C). However, the Director nevertheless might wish to explain his or her thinking in that regard. At least in theory, the Director can do so in two ways. First, the Director simply might announce that no temporary rule is required, because he or she has concluded that the condition at issue is not a disability. Alternatively, the Director could adopt a temporary rule that assigns to the condition an impairment value of zero. Either way, the Director would be announcing a legal conclusion that he or she must make to determine his or her obligations under ORS 656.726(4)(f)(C). Either way, the courts then could review the conclusion for legal error. We see nothing in either the wording or the logic of the statute that would preclude the Director from announcing his or her choice through the temporary rule device.

Claimant also argues that the temporary rule is contrary to ORS 656.726(4)(f)(C), because it purports to assign an impairment value to a surgical procedure *qua* procedure, rather than to the specific impairment that claimant suffered as a result of that procedure. Claimant notes that, by its express terms, ORS 656.726(4)(f)(C) contemplates case-specific accommodation of *the worker's* impairment. Claimant further notes that the clear purpose of ORS 656.726(4)(f)(C) is to ensure that claimants with atypical disabilities receive consideration, even if the existing disability standards do not address their particular conditions. Claimant contends that the present rule addresses the screw removal procedure as a categorical matter and, therefore, is responsive neither to the express words of the statute nor to its purpose.

■　　We agree with claimant that, if the Director finds that a worker suffers from an impairment that results in disability and that that disability is not addressed by existing standards, then the Director must promulgate a rule that

addresses the worker's particular impairment. The Director cannot escape that duty by, for example, making some categorical pronouncement about the ordinary and expected effects of the event that caused the impairment.

■    We now apply the foregoing principle to the rule adopted by the Director in the present case. The Director's response to claimant's condition turned on the following two sentences: "Bristow repair of a dislocated shoulder improves the function of the shoulder and reduces the chance of dislocation. Removal of the screw fixation device does not result in recognized loss of shoulder function." The first sentence is a general observation about the intent of performing a Bristow repair; it does not purport to address claimant's particular circumstance at all. When considered with that first sentence, the second sentence also turns out to be an abstract statement: Its use of the present tense (repair "does not result" in recognized loss of shoulder function) demonstrates that the sentence purports to be a generalized statement concerning the expected medical outcome of the procedure. That sentence is not a response either to the specific surgery that claimant underwent or to the sequellae of that surgery.

The Director's failure to address claimant's personal circumstances, as opposed to the generality of circumstances attendant upon the two kinds of surgeries, means that the Director's temporary rule was unresponsive as a matter of law. The Director thus has not yet performed the function contemplated by ORS 656.726(4)(f)(C) with respect to claimant's condition. The contrary conclusions of the Court of Appeals and the Board were in error.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed and the case is remanded to the Workers' Compensation Board with instructions to remand the case to the Director of the Department of Consumer and Business Services for further proceedings.