Argued and submitted July 25, reversed and remanded November 23, 2005

In the Matter of the Compensation of
Sandra A. Ainsworth, Claimant.

Sandra A. AINSWORTH,
*Petitioner,*

*v.*

SAIF CORPORATION
and Department of Corrections,
*Respondents.*

03-03658; A124732

124 P3d 616

R. Adian Martin argued the cause and filed the briefs for petitioner.

David L. Runner, Special Assistant Attorney General, argued the cause for respondents. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge.*

SCHUMAN, P. J.

---

* Landau, J., *vice* Richardson, S. J.

## SCHUMAN, P. J.

Claimant in this workers' compensation case challenges an administrative rule under which a worker who has sustained compensable brain damage from an injury cannot receive benefits for psychiatric impairment caused by the same injury even when the psychiatric impairment alone, or the two impairments in conjunction, are more extensive than the organic brain damage alone. Claimant argues that the rule is inconsistent with its authorizing statutes because those statutes require that compensation be based on the total extent of disability resulting from an injury. She further argues that the rule violates the equality guarantee in Article I, section 20, of the Oregon Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We agree with claimant's first argument and therefore do not reach the constitutional issues.

The relevant facts are few and undisputed. As the result of an injury arising out of and in the course of her employment as a corrections officer—she was beaten by an inmate—claimant suffered, among other things, permanent brain damage and permanent psychiatric impairment. The brain damage alone entitled her to an award of 50 percent permanent partial disability (PPD) benefits, and the psychiatric damage, had it occurred alone, would have entitled her to 81 percent PPD benefits. The Workers' Compensation Board (board), applying OAR 436-035-0390, awarded benefits based on 50 percent impairment. That rule, the focus of this appeal, provides, in part:

"(10) Impairment for injuries that have resulted in damage to the brain is determined based upon a preponderance of medical opinion * * *.

"* * * * *

"(12) If a value of impairment is determined under section (10) of this rule, no additional value for speech or psychiatric impairment is allowed."

In the absence of the rule, claimant would have received benefits based on at least 81 percent PPD.[1]

Claimant's subconstitutional argument is that, in promulgating the rule, the director of the Department of Consumer and Business Services exceeded the authority granted to him or her by the legislature. The relevant statutes require the director to adopt rules that provide full compensation for an injured worker's disability, while the rule mandates less than full compensation. Employer, for its part, responds that we cannot address the statutory argument because claimant did not raise it before the director at reconsideration, and, under ORS 656.268(8), "[n]o hearing shall be held on any issue that was not raised and preserved before the director at reconsideration." Further, employer contends, even if we can consider the subconstitutional argument, we should reject it on the ground that the disputed rule is within the director's statutory authority.

■■ We begin with employer's argument that claimant, by failing to raise her subconstitutional argument before the director, waived her right to raise that argument in the subsequent steps of the litigation. Claimant responds:

"In every constitutional challenge to an administrative rule, it is the duty of the judiciary, or administrative decision maker, to first address subconstitutional grounds as they are always and implicitly raised by a constitutional challenge."

According to claimant, then, she did not fail to preserve her statutory argument because that argument is implicitly and automatically contained within the constitutional argument. Although we do not necessarily agree with the way claimant phrases her argument, we agree with the principle that it expresses: Before addressing an argument that a rule violates the constitution, a court must first decide whether the rule is invalid on other, subconstitutional, grounds. That

---

[1] The board found that the 50 percent PPD award that claimant received by operation of OAR 436-035-0390 deprived her of 31 percent PPD, implying that, but for the rule, she would have received 81 percent. Although claimant does not argue that the board's calculation is wrong, she does assert, without argument, that, but for the rule, she would have received 89 percent. We leave the resolution of that dispute to the board on remand.

principle, part of what is sometimes called "the avoidance doctrine," was classically announced by Justice Brandeis:

> "The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of. * * * Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."

*Ashwander v. Tennessee Valley Authority*, 297 US 288, 346, 56 S Ct 466, 80 L Ed 688 (1936) (Brandeis, J., concurring). The Court explained the policy's rationale in *Rescue Army v. Municipal Court of City of Los Angeles*, 331 US 549, 571, 67 S Ct 1409, 91 L Ed 1666 (1947):

> "The policy's ultimate foundations * * * lie in all that goes to make up the unique place and character, in our scheme, of judicial review of governmental action for constitutionality. They are found in the delicacy of that function, particularly in view of possible consequences for others stemming also from constitutional roots; the comparative finality of those consequences; the consideration due to the judgment of other repositories of constitutional power concerning the scope of their authority; the necessity, if government is to function constitutionally, for each to keep within its power, including the courts; the inherent limitations of the judicial process, arising especially from its largely negative character and limited resources of enforcement; withal in the paramount importance of constitutional adjudication in our system."

■■ Although the avoidance doctrine is not without its critics, *see, e.g.*, Lisa A. Kloppenberg, *Avoiding Constitutional Questions*, 35 BC L Rev 1003 (1994), the Oregon Supreme Court has not been among them. In *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984), the court explicitly instructed that, before addressing the constitutionality of an administrative rule, the court must determine "whether the substance of the action, though within the scope of the agency's or official's general authority, departed from a legal standard expressed or implied in the particular law being administered[.]" The reason for the rule, the court explained, is

"to assure that the challenged action, particularly an action challenged for arguably violating constitutional rights, in fact was authorized by the state's * * * politically accountable policy makers. Only if the action was clearly so authorized is there any reason to decide whether the state * * * has adopted a policy that the constitution forbids."

*Id.*; *accord Leo v. Keisling*, 327 Or 556, 560, 964 P2d 1023 (1998); *State ex rel Keisling v. Norblad*, 317 Or 615, 624, 860 P2d 241 (1993); *Zockert v. Fanning*, 310 Or 514, 520, 800 P2d 773 (1990). *Zockert* is particularly relevant to the present case because, like the parties here, the parties in that case raised only constitutional issues. The court held, "This court decides cases upon sub-constitutional grounds, where available, even though litigants argue only constitutional errors." *Id*. That is so because otherwise, the court could be forced to decide constitutional questions unnecessarily. " '[W]hen a potential constitutional violation is involved, the parties' omission of a dispositive source or argument of ordinary law cannot compel a court to a needless constitutional decision.' " *Boytano v. Fritz*, 321 Or 498, 504, 901 P2d 835 (1995) (quoting *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988)). Thus, even if claimant in the present case had never raised her subconstitutional argument, we would be obligated to address it before reaching the constitutional question. *A fortiori*, the fact that she did not raise it before the director as required by ORS 656.268(8) does not preclude us from addressing it.

■ We turn, then, to that argument, in particular to the contention that OAR 436-035-0390(10) and (12) exceed the director's authority under relevant statutes. The rule, we repeat, provides that a worker who has incurred compensable brain damage and also compensable psychiatric disability can receive PPD benefits only for the brain damage. The relevant statutes are ORS 656.726(4)(f)(A), which gives the director the authority to adopt rules that establish the "criteria for evaluation of [unscheduled] disabilities under ORS 656.214(5)," and ORS 656.214(5) itself, which provides:

"In all cases of injury resulting in permanent partial disability, * * * the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. * * * The number of degrees of disability shall be a maximum of 320 degrees determined by the extent of

the disability compared to the worker before such injury and without such disability."

The last sentence of the quoted rule is grammatically opaque, but the parties and the board appear to agree on its meaning: Normally, the extent of a worker's disability caused by an injury is measured by calculating the difference between what the worker's capacity was before (and without) the injury and what her capacity is after it (subject to a maximum that is not implicated here).[2]

Although, as indicated above, the parties agree on the meaning of the statutes insofar as they apply to most injuries, they disagree as to the meaning with respect to injuries leading to both brain damage and psychiatric disability. According to employer, the director has the general authority to determine what constitutes a disability under the Workers' Compensation Law. *Shubert v. Blue Chips*, 330 Or 554, 559-60, 9 P3d 114 (2000). He also has the authority to "[p]rovide standards for the evaluation of disabilities," ORS 656.726(4)(f), that is, the authority "to determine how various impairments will be evaluated and translated into awards." Those grants of authority, employer argues, encompass the authority to enact the presumption that, when a single incident causes both organic brain injury and psychiatric disability, there is such significant overlap between the two resultant disabilities that they should be evaluated as though there were only one disability, namely, the disability caused by the brain injury—hence OAR 436-035-0390(12). Claimant, as noted above, argues that the statutes confer on the director a much more limited range of authority.

The parties couch their disagreement in terms of the categories established in *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980). Employer contends that the relevant statutory terms are "delegative," that is, they embody the lawmakers' decision to state only a very general policy, intending to leave the director with the authority to refine and complete that policy by rule. *Id.* at 228-29. Claimant contends that the relevant statutory terms

---

[2] A worker's capacity is sometimes expressed in "degrees," ranging from full capacity (320 degrees) to total incapacity (zero degrees). Degrees, along with other factors, translate into percentages.

are "inexact," that is, they embody a complete statement of legislative policy and leave the director with the obligation to discern that policy and promulgate rules to implement it. *Id.* at 224. The reason the parties fight over those classifications is that, if the statute contains delegative terms, our level of deference to the director's rule interpreting and applying the statute is extremely high, whereas if the statute contains inexact terms, our task is independently to discern legislative intent. *Id.* at 224, 229.

Even if we were to agree that ORS 656.726(4)(f)(A) contains some delegative terms, the fact remains that whatever discretion might inhere in such terms is explicitly constrained by the cross-referenced statute, ORS 656.214(5), which establishes the method for rating "*all* cases of injury resulting in [unscheduled] permanent partial disability[.]" (Emphasis added.) That method, as noted above, requires rules "for [the] rating of disability" based on "the permanent loss of earning capacity due to the compensable injury." The statute cannot be read to permit partial compensation or to segment the disability caused by a single compensable injury into distinct organic and psychiatric parts and then compensate only one of them.

Nor does employer argue that it does. Rather, its argument, as we understand it, is that the director has discretion to presume that brain injury disabilities overlap with psychiatric disabilities to such an extent that rating only the brain injury can always be said fairly to accomplish the objective of full compensation. We disagree. The director's assumption is true only to the extent that the psychiatric disability is wholly contained within the brain injury disability. That is not the case here. Claimant's brain damage entitles her to 50 percent PPD, while her psychiatric damage entitles her to 81 percent PPD.

In sum, we conclude that, in promulgating OAR 436-035-0390(12), the director exceeded his statutory authority to the extent that the rule fails to provide compensation for psychiatric disability that is not also brain damage as defined in OAR 436-035-0390(10). The relevant statutes call for PPD to cover loss of capacity resulting from an injury. The director's

rule does not do so in this case and therefore cannot be applied to claimant.

Reversed and remanded.