2008 UT 48

Jodi CONATSER, Kevin Conatser, Lacey Conatser, and Nicole Mann, Plaintiffs and Appellants,

v.

Wayne JOHNSON, Duane Johnson, Randy Sessions, Michael McMillan, Lynn Brown, Gerald Stout, John and Jane Does 6–25, Clark Sessions, and Shane E. Matthews, Defendants and Appellees.

No. 20060558.

Supreme Court of Utah.

July 18, 2008.

Rehearing Denied Aug. 28, 2008.

Gerald E. Nielson, Elizabeth A. Schulte, Robert H. Hughes, Michael M. Quealy, Salt Lake City, for plaintiffs.

Ronald G. Russell, Royce B. Covington, Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 In this case, we must determine the scope of the public's easement in state waters. More specifically, we must determine whether the easement, which allows the public to engage in recreational activities in state waters, also allows the public the right to touch the privately owned beds below those waters.[1]

¶ 2 Plaintiffs, the Conatsers, sought a declaration from the district court that the public's easement allows the public to "touch or walk on the bottoms [of state waters] in non-obtrusive ways." The district court denied the Conatsers' motion for partial summary judgment on this issue, holding that the scope of the public's easement limits the Conatsers' rights to (1) being "upon the water" and (2) touching the privately owned bed of the Weber River only as "incidental to the right of floatation upon" the water. We reverse the district court's holding and, for the reasons detailed below, hold that the scope of the public's easement in state waters allows the public to (1) engage in all recreational activities that utilize the water and (2) touch privately owned beds of state waters in ways incidental to all recreational rights provided for in the easement.

## BACKGROUND

¶ 3 The parties do not dispute the underlying facts in this case. On or about June 4, 2000, the Conatsers put a rubber raft in the Weber River at a public access point and began floating down the river. While floating, the Conatsers crossed parcels of private property belonging to the Johnsons and touched the river bed in four ways: (1) the raft occasionally touched the shallow parts of the river bottom, (2) the raft's paddles occasionally touched the river bottom, (3) the fishing tackle used by Kevin Conatser touched the river bottom, and (4) Kevin Co-

---

1. We use the term "touch" to encompass all aspects of touching, including walking and standing on the privately owned beds of state waters.

natser intentionally got out of the raft and touched the river bottom by walking along it to fish and move fencing that the Johnsons had strung across the river. As they had done on at least two previous occasions, the Johnsons ordered the Conatsers off the river and told them to pick up their raft and carry it out via a parallel railroad easement. The Conatsers refused and continued floating down the river. When they exited at a public access point, the Morgan County Deputy Sheriff cited them for criminal trespass.

¶ 4 The Morgan County Justice Court found the Conatsers guilty of criminal trespass, and they appealed. The State dismissed the charge, finding that there was "uncertainty regarding the Conatsers' status as trespassers." While the criminal case was pending, and due to the long-running dispute between the Johnsons and the Conatsers, the Conatsers filed a civil action in the Second District Court seeking a judicial determination of their rights to use the Weber River. The parties filed cross-motions for summary judgment on the issue of the Conatsers' right to touch the Weber River's bed where the river crosses the Johnsons' property. In their motion for partial summary judgment, the Conatsers argued that, as a matter of law, they were entitled to "recreate in natural public waters ... [which] includes the right to touch or walk upon the bottoms of said waters in non-obtrusive ways."

¶ 5 The district court denied this part of the motion, concluding that the scope of the easement limited the Conatsers to activities that could be performed "upon the water,"—chiefly floating—and that the right to touch the river's bed was incidental only to the right of floatation. Thus, the district court held that the Conatsers "may walk along the banks of the river ... in order *to continue floating* ... so long as [their] actions are as minimally intrusive as possible of the private owners' land." (Emphasis added.) But "[w]ading or walking along the river, where

such conduct *is not incidental to the right of floatation* upon natural waters, would constitute a trespass of private property rights." (Emphasis added.)

¶ 6 The Conatsers challenge the portion of the court's judgment that limits their right to touch the river's bed only in ways "incidental to the right of floating" and seek a declaration that as "members of the general public," they "have the right to walk on the bed of the Weber River and wade in its waters." We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

## ANALYSIS

¶ 7 Our analysis begins with a review of public ownership rights in state waters and private ownership rights in the beds that lie beneath those waters. We then review the district court's decision regarding the scope of the public's easement in state waters.

## I. STATE WATERS ARE OWNED BY THE PUBLIC, WHICH HAS AN EASEMENT TO USE THOSE WATERS, WHILE THE BEDS OF STATE WATERS MAY BE PRIVATELY OWNED

¶ 8 By statute, "[a]ll waters in this state, whether above or under the ground, are hereby declared to be the property of the public, subject to all existing rights to the use thereof."[2] Under this "doctrine of public ownership," the public owns state waters and has an "easement over the water regardless of who owns the water bed beneath."[3] In granting the public this easement, "state policy recognizes an interest of the public in the use of state waters for recreational purposes."[4] This court has enumerated the specific recreational rights that are within the easement's scope. They include the "right to float leisure craft, hunt, fish, and

---

2. Utah Code Ann. § 73–1–1 (Supp.2007); *see also Adams v. Portage Irrigation, Reservoir & Power Co.*, 95 Utah 1, 72 P.2d 648, 652 (1937) (holding that waters in Utah are of two classes, private and public, and title to public waters "is in the public; all are equal owners; that is, have coequal rights therein").

3. *J.J.N.P. Co. v. State*, 655 P.2d 1133, 1136 (Utah 1982).

4. *Id.*

participate in any lawful activity when utilizing that water."[5]

■■ ¶ 9 While the public owns state waters, the beds that lie beneath those waters may be privately owned. And navigability is the "standard used to determine title to" the beds of state waters.[6] If a body of water is navigable—that is, if it is useful for commerce and has "practical usefulness to the public as a public highway"—then the state owns the water's bed.[7] If it is non-navigable, then its bed may be privately owned. The public's easement to use the water, however, exists "[i]rrespective of the ownership of the bed and navigability of the water."[8] In this case, then, navigability is relevant only to establish: (1) that the Johnsons own the river bed at issue, and (2) that the public has an easement to use the Weber River where it crosses the Johnsons' property. The question remaining is this: what is the scope of that easement?

## II. THE DISTRICT COURT INCORRECTLY INTERPRETED THE SCOPE OF THE PUBLIC'S EASEMENT IN STATE WATERS

■■ ¶ 10 Determining the scope of an easement is a question of law.[9] And where issues on appeal are purely legal in nature, "we review the district court's decision for correctness, without deference."[10] In this case, the district court made two decisions that we will review. The district court interpreted the scope of the public's easement as limiting the Conatsers' rights to (1) being "upon the water" and (2) touching the privately owned bed of the Weber River only in ways "incidental to the right of floatation upon" the water. While the Conatsers challenge only the latter decision, we must address both decisions because the scope of

incidental rights is dependent on the scope of actual rights provided for in the easement. We will address each of the district court's decisions in turn.

### A. The Scope of the Public's Easement Allows the Public to Engage in All Recreational Activities That Utilize the Water

¶ 11 The first relevant decision of the district court is that the scope of the public's easement to utilize state waters for recreational purposes limits the Conatsers' rights to being "upon the water." In arriving at this holding, the district court relied on a Wyoming case, *Day v. Armstrong*.[11]

¶ 12 In *Day*, a member of the public sought a declaration that he was entitled to fish "either from a boat floating upon the river waters, or while wading the waters, or walking within the well-defined channel of" the North Platte River where it crossed privately owned land.[12] The Wyoming Supreme Court denied the plaintiff's request to fish by any means other than floating, reasoning that because waters are not "in trespass upon or over the lands where they naturally appear, they are available for such uses by the public of which they are capable. When waters are able to float craft, they may be so used."[13] The *Day* court limited the scope of the public's easement to the "right of floatation" upon the water and allowed only those activities that could be done "while so lawfully floating ... [including the right to] hunt or fish or do any and all other things which are not otherwise made unlawful."[14] Thus, the right to hunt, fish, and engage in other lawful activities was modified by the right to float. That is, they could be done only while floating and only because floating occurred "upon" the water.

5. *Id.* at 1137.

6. *Id.* at 1136.

7. *Monroe v. State*, 111 Utah 1, 175 P.2d 759, 761 (1946) (quoting *Harrison v. Fite*, 148 F. 781, 784 (8th Cir.1906)).

8. *J.J.N.P.*, 655 P.2d at 1137.

9. *Valcarce v. Fitzgerald*, 961 P.2d 305, 312 (Utah 1998).

10. *Thompson v. Utah State Tax Comm'n*, 2004 UT 107, ¶ 9, 112 P.3d 1205.

11. 362 P.2d 137 (Wyo.1961).

12. *Id.* at 140.

13. *Id.* at 145.

14. *Id.* at 147.

¶ 13 In this case, the district court adopted the precise language of *Day* in limiting the Conatsers' rights to being upon the water, but it also ruled that the Conatsers' use of the river is limited to the bounds of the holding of *J.J.N.P. Co. v. State.*[15]

¶ 14 In *J.J.N.P.*, we interpreted the scope of the public's easement in Utah waters. While we referenced *Day* in recognizing that the public has an easement "over the water regardless of who owns the water beds beneath,"[16] we did not adopt the language that limits the easement's scope to activities that can be performed upon the water. Instead, we established our own rule that the public has "the right to float leisure craft, hunt, fish, and participate in any lawful activity when *utilizing* that water."[17] The interpretive difference turns on a single, significant word. Where *Day* limits the easement's scope to activities that can be performed "upon" the water, this court expands the scope to recreational activities that "utilize" the water. Thus, the rights of hunting, fishing, and participating in any lawful activity are coequal with the right of floating and are not modified or limited by floating, as they are in *Day*.

■ ¶ 15 The district court erred in adopting the limiting language of *Day*. We now clarify that the scope of the public's easement in state waters provides the public the right to engage in all recreational activities that *utilize* the water and does not limit the public to activities that can be performed *upon* the water.

*B.   Touching the Beds of State Waters Is Incidental to All Recreational Rights Provided for in the Easement*

¶ 16 Having established the actual rights provided for in the easement, we next address the scope of incidental rights. Specifi-

cally, we review the district court's decision that the Conatsers may touch the river's bed only in ways incidental to the right of floatation and that any "use of the streambed [that] is more than incidental to the right of floating ... would constitute a trespass." In reaching this conclusion, the district court again relied on and adopted the language of *Day*.

¶ 17 Because the *Day* court narrowly interpreted the scope of the easement to activities that could be performed upon the water, it also determined that the incidental right to touch the water's bed was similarly limited. Thus, the *Day* court held that while floating, the public may "scrape[ ] or touch[ ]" the river's "bed or channel."[18] And "as a necessary incident to the full enjoyment of the public's easement," the public may "disembark and pull, push or carry over shoals, riffles and rapids" their floating conveyance.[19] But, "where the use of the bed or channel is more than incidental to the right of floating ... such wading or walking is a trespass upon lands belonging to a riparian owner and is unlawful."[20]

¶ 18 The district court adopted this language to limit the Conatsers' right to touch the river's bed only as incidental to the right of floatation. And while *Day's* limitation is reasonable given that court's narrow interpretation of the easement's scope, it is not reasonable given the scope of the easement we established in *J.J.N.P.*

¶ 19 Because the issue of incidental rights was not before us in *J.J.N.P.*, we did not reach it: "As to whether the public has an easement in the *beds* of streams and lakes, we express no opinion."[21] The issue is now properly before us, and we hold that the public has the right to touch privately owned beds of state waters in ways incidental to all

---

**15.**  655 P.2d 1133 (Utah 1982). In *J.J.N.P.*, a limited partnership sought to build a private fish installation in state waters claiming its rights in the water "based solely on its ownership of the surrounding land." We rejected J.J.N.P.'s argument, reiterating that state waters are "the property of the public." *Id.* at 1136–37.

**16.**  *Id.* at 1136.

**17.**  *Id.* at 1137 (emphasis added).

**18.**  362 P.2d at 145–46.

**19.**  *Id.*

**20.**  *Id.*

**21.**  655 P.2d at 1138 n. 6.

recreational rights provided for in the easement.

¶ 20 "An easement is a privilege which one person has a right to enjoy over the land of another."[22] Therefore, an easement "gives rise to two distinct property interests: a 'dominant estate,' that has [the] right to use land of another, and a 'servient estate,' that permits the exercise of that use."[23] Because there are two parties' interests involved, "[t]he right of the easement owner and the right of the land-owner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both."[24]

¶ 21 The easement holder also enjoys "the privilege to do such acts as are necessary to make effective his or her enjoyment of the easement."[25] That is, an easement holder has the right to make incidental uses beyond the express easement and does not exceed the easement's scope if those uses are "made in a reasonable manner and they do not cause unnecessary injury to the servient owners."[26]

¶ 22 The question before us is whether the incidental right of touching the water's bed is reasonably necessary for the effective enjoyment of the public's easement and does not cause unnecessary injury to the landowner.

¶ 23 First, touching the water's bed is reasonably necessary and convenient for the effective enjoyment of the public's easement. The public has the right to float, hunt, fish, and participate in all lawful activities that utilize state waters. The practical reality is that the public cannot effectively enjoy its right to "utilize" the water to engage in recreational activities without touching the water's bed.

¶ 24 In its holding, the district court recognized that touching the river's bed may be "a necessary incident" to utilizing the water to float. It may be just as necessary, however, when utilizing the water to hunt or fish. The Conatsers urge this court to take judicial notice of the fact "that people engaged in fishing often do so by wading into the water itself, walking up or downstream in pursuit of a favorable spot." We agree that touching the water's bed is a common action in fishing and that it is reasonably necessary for the effective enjoyment of it. The same is true for hunting.

¶ 25 In addition to the enumerated rights of floating, hunting, and fishing, the public may engage in any lawful activity that utilizes the water. In many cases, touching the water's bed is reasonably necessary for the effective enjoyment of those activities. Swimming and wading, for example, are lawful activities that utilize the water but cannot be effectively enjoyed or even practically accomplished without touching the water's bed.

¶ 26 Having determined that touching the water's bed is reasonably necessary for the effective enjoyment of all the rights provided for in the easement, the next question is whether such touching causes unnecessary injury to landowners. We hold that it does not.

¶ 27 As noted, an easement holder must make use of his easement "in a reasonable manner" and in a way that does not "cause unnecessary injury to the servient owners."[27] In this case, the Johnsons and every private landowner to whom the easement applies are subject to the reasonable burdens imposed by the easement. These burdens include the public's right to both travel over private property when floating and to touch the water's bed while floating. Touching a water's bed in association with other easement rights is merely part of the existing burden—it is not an additional burden and thus is not

22. 25 Am.Jur.2d *Easements and Licenses in Real Property* § 1 (2007).

23. *Id.*

24. *Big Cottonwood Tanner Ditch Co. v. Moyle,* 109 Utah 213, 174 P.2d 148, 158 (1946) (internal quotation marks omitted).

25. 25 Am.Jur.2d *Easements and Licenses in Real Property* § 81 (2004).

26. *Big Cottonwood Tanner Ditch Co.,* 174 P.2d at 160.

27. *Id.*

more injurious to landowners. If the public's use does cause unnecessary injury to the landowner, that use is beyond the easement's scope.

¶ 28 There are, in fact, several limitations on the public that protect a landowner's interests. First, the public may engage only in lawful recreational activities. Second, those activities must utilize the water. Where utilizing the water is not the purpose, the activity is beyond the scope of the easement. Third, as noted, the public must act reasonably in touching the water's bed. Finally, the public may not cause unnecessary injury to the landowner. If the public acts beyond these strictures, it has exceeded the scope of the easement.

## CONCLUSION

¶ 29 The district court incorrectly interpreted the scope of the public's easement in state waters so as to limit the Conatsers' rights to being upon the water and to touching the privately owned bed of the Weber River only in ways incidental to the right of floatation.

¶ 30 We hold that the scope of the easement provides the public the right to float, hunt, fish, and participate in all lawful activities that utilize the water. We further hold that the public has the right to touch privately owned beds of state waters in ways incidental to all recreational rights provided for in the easement, so long as they do so reasonably and cause no unnecessary injury to the landowner.

¶ 31 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.