Justice Himonas, concurring in part and dissenting in part:
 

 ¶95 The doctrine of constitutional avoidance has existed since our nation's infancy. To quote Chief Justice John Marshall:
 

 No questions can be brought before a judicial tribunal of greater delicacy than those which involve the constitutionality of a legislative act. If they become indispensably necessary to the case, the court must meet and decide them; but if the case may be determined on other points, a just respect for the legislature requires, that the obligation of its laws should not be unnecessarily and wantonly assailed.
 

 Ex parte Randolph
 
 ,
 
 20 F. Cas. 242
 
 , 254 (C.C.D. Va. 1833) (Marshall, J., concurring). Because I believe the majority opinion forsakes this norm, I respectfully dissent, albeit only in part.
 

 ¶96 I'm fully on board with the majority's account of
 
 Conatser v. Johnson
 
 ,
 
 2008 UT 48
 
 ,
 
 194 P.3d 897
 
 . We always have the prerogative to clarify a prior opinion. But that's as far down the line as I'm willing to go. I part company with my colleagues at their decision to allow the parties to force us to address compound, complicated constitutional matters by contriving to skip over an obvious non-constitutional predicate issue. This gambit by the parties is noxious to our long-held principle of constitutional avoidance.
 

 I
 

 ¶97 As a decisional rule we shouldn't let litigants "force this court to decide ... serious constitutional claim[s] by the simple expedient of not fully asserting a predicate ... issue."
 
 Hosp. & Serv. Emps. Union, Local 399,
 

 743 F.2d 1417
 
 , 1425 (9th Cir. 1984). This rule keeps faith with first principles and is consonant with the treatment of this topic by other courts.
 

 ¶98 Before I turn to a review of these principles and the authorities, a brief account of how the topic presents itself here is in order. By the appellees own admission, they intentionally left aside (while simultaneously attempting to preserve for future, potential litigation) an inquiry into whether the Provo River is navigable.
 
 [8]
 
 Instead, by choosing to frame the litigation in terms of "an easement right of a 'dominant' estate holder,"
 
 see
 

 supra
 
 ¶ 31, both parties have asked the court to blind itself and suppose that VR Acquisitions owns the streambed of the Provo River
 
 [9]
 
 and to limit its analysis based on that supposition. The majority does just that. And with this predicate issue now neatly tucked away, the majority goes on to outline the parties' future briefings before the district court on a number of important constitutional issues.
 

 ¶99 The glaring problem with this approach is that VR Acquisitions may not own the streambed. The parties appear to accept for purposes of this litigation that the Provo River was at one time used for log drives. To this end, in paragraph 8 of the Stipulated Statement of Undisputed Material Facts section of its memorandum in support of its motion for summary judgment, USAC notes that, "[t]he Provo River was used during the 1880s and 1890s, to float timbers during high waters from the Uinta Mountains to Utah Valley and points in between, where they were used for railroad ties, railroad trestle timbers, mine shoring timbers, cordwood or saw wood."
 

 ¶100 This factual assertion provides a basis in the record from which USAC could argue that the Provo River was both useful for commerce and had practical usefulness to the public as a public highway.
 
 See
 

 Utah Stream Access Coal. v. Orange St. Dev.
 
 ,
 
 2017 UT 82
 
 , ¶ 19,
 
 416 P.3d 553
 
 (noting the PWAA's definition of "navigable water" as "a water course that is
 
 useful for commerce
 
 and has a useful capacity as a
 
 public highway of transportation
 
 ") (citation omitted) (internal quotation marks omitted). And, as "the touchstone of navigability is commercial utility," this court has previously held that "log drive evidence in the record can adequately establish commercial utility."
 
 Id.
 
 ¶¶ 29, 31. Furthermore, a regular and common commercial use such as log driving may satisfy the navigability test
 "even if navigable conditions are not continuous."
 
 Id.
 
 ¶ 34.
 

 ¶101 I express no opinion as to whether the Provo River's history does in fact support a claim of navigability, but the potential for such a claim makes any determinations of constitutional questions premature and potentially unnecessary. Therefore, before proceeding as the majority does, I would either request supplemental briefing on this question or, preferably, instruct the district court to take it up on remand.
 
 [10]
 
 But, instead, the majority acquiesces to the parties' set-up-for purposes of this litigation the navigability of the relevant stretch of the Provo River isn't in dispute-and unnecessarily allows the parties to manufacture a case in which the court must decide important constitutional issues.
 
 [11]
 
 This is anathema to how courts should go about the business of judging.
 

 II
 

 ¶102 To be sure, it's generally true, as the majority states, that we treat "the plaintiff as the master of the complaint."
 
 See
 

 supra
 
 ¶ 41. But pithy adages don't trump constitutional norms.
 
 [12]
 
 It's vital that this court "not be forced to ignore the law just because the parties have not raised or pursued obvious arguments,"
 
 Kaiserman Assocs., Inc. v. Francis Town
 
 ,
 
 977 P.2d 462
 
 , 464 (Utah 1998), particularly when it comes to constitutional matters. "It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."
 
 Ashwander v. Tenn. Valley Auth.
 
 ,
 
 297 U.S. 288
 
 , 347,
 
 56 S.Ct. 466
 
 ,
 
 80 L.Ed. 688
 
 (1936) (Brandeis, J., concurring) (citation omitted) (internal quotation marks omitted).
 

 ¶103 The majority fails to properly respect this decisional norm by opting to allow the parties to skip over the predicate legal question of who holds title to the river bed. A return to first principles demonstrates just how bad an idea this is.
 

 ¶104 "The rationales behind the doctrine of avoiding constitutional questions except as a last resort are grounded in fundamental constitutional principles-the great gravity
 and delicacy of judicial review, separation of powers, the paramount importance of constitutional adjudication, the case or controversy requirement, and principles of federalism."
 
 N.J. Payphone Ass'n, Inc. v. Town of W. N.Y.
 
 ,
 
 299 F.3d 235
 
 , 249 (3d Cir. 2002) (Alito, J., concurring in the judgment) (internal quotation marks omitted). Adherence to this doctrine prevents us from issuing misguided decisions that could have otherwise been avoided through the exercise of some judicial restraint.
 
 See
 

 Muller Optical Co. v. EEOC
 
 ,
 
 743 F.2d 380
 
 , 386 (6th Cir. 1984) ("The duty to avoid decisions of constitutional questions ... [is] based upon the general policy of judicial restraint."); 13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER , FEDERAL PRACTICE & PROCEDURE § 3531.3 (3d ed. 2018) ("The concern that unnecessary decisions be avoided has its most important justification in the prospect that unnecessary decisions may be wrong decisions."). Indeed, such judicial restraint is especially important in the realm of constitutional law.
 
 See
 
 Thomas Healy,
 
 The Rise in Unnecessary Constitutional Rulings
 
 , 83 N.C. L. REV. 848, 848-49 (2005) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, the Court has often stated, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable." (alteration in original) (citation omitted) (internal quotation marks omitted)).
 

 ¶105 In solidarity with this need for judicial restraint, courts have declared that parties don't have the right to force constitutional issues on judges by skipping over non-constitutional predicate questions.
 
 See, e.g.
 
 ,
 
 W. E. B. DuBois Clubs of Am. v. Clark
 
 ,
 
 389 U.S. 309
 
 , 312,
 
 88 S.Ct. 450
 
 ,
 
 19 L.Ed.2d 546
 
 (1967) (per curiam) ("[T]he District Court should not be forced to decide ... constitutional questions in a vacuum.");
 
 VNA Hospice of Md. v. Dep't of Health & Mental Hygiene,
 

 406 Md. 584
 
 ,
 
 961 A.2d 557
 
 , 570 (2008) ("Litigants may not force the Court to decide constitutional issues unnecessarily by failing to raise a non-constitutional issue which can properly dispose of the case.");
 
 Ainsworth v. SAIF Corp.
 
 ,
 
 202 Or.App. 708
 
 ,
 
 124 P.3d 616
 
 , 619 (2005) ("[W]hen a potential constitutional violation is involved, the parties' omission of a dispositive source or argument of ordinary law cannot compel a court to a needless constitutional decision.") (alteration in original) (citation omitted) (internal quotation marks omitted).
 
 [13]
 

 ¶106 It certainly has been the settled practice in this state to avoid ruling on constitutional questions when they aren't needed to resolve a case. As we recently held, "[b]efore embarking on a review of ... constitutional principles ... our long-standing policy of avoiding unnecessary constitutional decisions ... counsel[s] that a decision on the continuing vitality of ... [constitutional provisions] ... be avoided unless it is really necessary."
 
 State v. Rowan
 
 ,
 
 2017 UT 88
 
 , ¶ 22,
 
 416 P.3d 566
 
 (Himonas, J., concurring) (citation omitted) (internal quotation marks omitted) (first alteration in original);
 
 see also
 

 State v. Wood
 
 ,
 
 648 P.2d 71
 
 , 82 (Utah 1982) ("It is a fundamental rule that we should avoid addressing ... constitutional issue[s] unless required to do so.").
 

 ¶107 As a countermeasure, the majority cites our decisions in
 
 Conatser v. Johnson
 
 ,
 
 2008 UT 48
 
 ,
 
 194 P.3d 897
 
 , and
 
 J.J.N.P. Co. v. State
 
 ,
 
 655 P.2d 1133
 
 (Utah 1982), in support of the proposition that a navigability claim is not a necessary antecedent to an easement-based claim of public access to the Provo
 River.
 
 See
 

 supra
 
 ¶ 35. The majority's logic has no play here. Neither
 
 Conaster
 
 nor
 
 J.J.N.P.
 
 called upon us to rule on the constitutionality of a legislative enactment in relevant part. In
 
 Conatser
 
 we accepted that the waters were nonnavigable, and that the streambed could therefore be privately owned for purposes of determining the scope of the public's easement in state water, but no question of constitutional law was before us.
 
 2008 UT 48
 
 , ¶¶ 11-19,
 
 194 P.3d 897
 
 . So too, in the portion of
 
 J.J.N.P.
 
 cited by the majority, we defined only the public's right to access public waters unrelated to any interest in the underlying land and without making a determination of constitutional law.
 
 655 P.2d at 1135-37
 
 . Because making a determination of navigability in both
 
 Conatser
 
 and
 
 J.J.N.P.
 
 wouldn't have helped avoid resolving a question of constitutional law, we were able to accept that a navigability inquiry wasn't a necessary antecedent.
 

 ¶108 This isn't the case here. The PWAA reads that the public may "incidentally touch private property as required for safe passage and continued movement." UTAH CODE § 73-29-202(2)(a). Any easement inquiry rests on the unverified assumption that the streambed is private property owned by VR Acquisitions. We're unsure that this is, in fact, true. And, in this case, we cannot separate the question of ownership of the streambed from the statutory challenge at issue. We should hold off on weighing in on the constitutional questions until we have an answer to this antecedent question. USAC has already made clear that it wishes to preserve the right to pursue a navigability-based theory of access in the future should its easement-based and constitutional claims fail. It therefore seems that the parties have asked us to strike down a statute as unconstitutional when an alternative right of relief, in harmony with our legislature's statutory intentions, may render the entire exercise unnecessary. Again, "[i]t is not the habit of the court[s] to decide questions of a constitutional nature unless absolutely necessary to a decision of the case," and it may very easily be avoidable here.
 
 Ashwander
 
 ,
 
 297 U.S. at 347
 
 ,
 
 56 S.Ct. 466
 
 (Brandeis, J., concurring) (citation omitted) (internal quotation marks omitted).
 

 ¶109 Additionally, the majority's attempts to guide the parties' future arguments place, in my view, too heavy a thumb on the scale. For example, the majority, while attempting not to settle the merits of the case, presents unnecessarily strong guidance on several issues of merit. It's unclear to me as yet why article XX section 1 of the Utah Constitution
 
 assuredly
 
 "does not protect mere 'interests' in land."
 
 See
 

 supra
 
 ¶ 63. It very well may. Additionally, I don't endorse the majority's view, or any view at this time, regarding the degree of state participation required to "acquire" or "accept" public lands or waters. I've nothing to say on this matter and look forward to a more thorough inquiry should this question appear before this court again.
 

 III
 

 ¶110 In short, if the section of the Provo River at issue is "navigable" then the streambed is not private property. "If a body of water is navigable-that is, if it is useful for commerce and has practical usefulness to the public as a public highway-then the state owns the water's bed."
 
 Conatser v. Johnson
 
 ,
 
 2008 UT 48
 
 , ¶ 9,
 
 194 P.3d 897
 
 (citation omitted) (internal quotation marks omitted). Any ruling defining the scope of a dominant estate to the Provo River bed necessarily takes for granted that VR Acquisitions owns the streambed, which in turn requires that the waters themselves be non-navigable. I express no opinion as to whether this last point is true or not, but a navigability inquiry logically must be settled before a private interest in the streambed can be defined. To do otherwise is to allow the parties to force this court to rule on an issue of constitutional law that determines the ownership of an estate that neither party may in fact own.
 

 ¶111 There may come a case that forces us to define the constitutional scope of the public's easement and how it attaches to privately owned streambeds, but it's not clear to me that this is that case. For this reason, I'm constrained to concur in part and dissent in part in the majority's judgment. The district court must settle the issue of navigability before making monumental rulings on the
 PWAA by way of a potentially superfluous public easement theory of the case.
 

 The majority states that the parties have actively disclaimed these potential claims.
 
 Supra
 
 ¶ 40. This is incorrect. USAC has expressly stated its awareness of these issues and their intent to pursue them. In USAC's words:
 

 In this matter, the Coalition seeks to preserve the public's
 
 right to use
 
 public waters and their beds irrespective of whether the waters are navigable under state and federal law and the Equal Footing Doctrine. In doing so, the Coalition does not concede that the Provo River is non-navigable. Indeed, the Coalition believes that the Provo is navigable. Should the Coalition not succeed in this matter, it anticipates that the Coalition or others will pursue a claim of public
 
 ownership
 
 of the waters and bed of the Provo River under the federal Equal Footing Doctrine.
 

 Memorandum in Support of Utah Stream Access Coalition's Motion for Summary Judgment, vii n.1, Sept. 2, 2011.
 

 Indeed, VR Acquisitions
 
 must own it
 
 , under USAC's assertion of a dominant estate easement right, as the corollary servient estate holder.
 

 The majority's assertion that our focus on the ownership question would contravene judicial economy by inserting a new claim proves too much.
 
 Supra
 
 ¶ 53. Judicial economy is a worthy goal but not at the cost of forfeiting our prerogative over constitutional questions. We cannot put the cart before the horse by allowing the parties to potentially and unnecessarily create a constitutional question so that we may more efficiently and speedily resolve their case. The parties' failure to raise the ownership of the streambed at trial should properly be remedied by remand to the district court.
 

 VR Acquisition's condition of owning the streambed is essential to the majority's disposition of the case. It's not just a logical antecedent but is in fact a
 
 necessary
 
 antecedent to a public trust based disposition. The majority's approach unavoidably accepts the parties' stipulations as to constitutional ownership.
 

 The majority unsuccessfully tries to raise this adage to the same plane as constitutional avoidance.
 
 Supra
 
 ¶ 45 n.4. They err in doing so. First, and tellingly, neither of the cases on which they rely-
 
 In re Adoption of B.B.
 
 ,
 
 2017 UT 59
 
 ,
 
 417 P.3d 1
 
 , or
 
 Combe v. Warren's Family Drive-Inns, Inc.
 
 ,
 
 680 P.2d 733
 
 (Utah 1984),
 
 supra
 
 ¶ 42-touch upon the constitutional avoidance issue. Second, and more importantly, the exceptions to the adage are many and extend far beyond constitutional avoidance. By way of example, (1) plaintiffs are certainly not "master of the complaint" when it comes to failing to name necessary parties, joinder, and intervention,
 
 see
 
 Utah R. Civ. P. 19, 21, & 24 ; (2) courts don't allow parties to stipulate in their pleadings or otherwise as to the interpretation of a statute,
 
 see, e.g.
 
 ,
 
 GeoMetWatch Corp. v. Utah State Univ. Research Found.
 
 ,
 
 2018 UT 50
 
 , ¶31,
 
 428 P.3d 1064
 
 ("[W]e are not bound by the parties' interpretation of a statute."); (3) parties cannot stipulate around mootness,
 
 see, e.g.
 
 ,
 
 Progressive Direct Ins. Co. v. Stuivenga
 
 ,
 
 276 P.3d 867
 
 , 875 (Mont. 2012) ("[P]arties to litigation cannot by stipulation present a moot question to this Court as the basis of a judicial decision."); (4) parties cannot stipulate away standing or subject matter jurisdiction,
 
 see, e.g.
 
 ,
 
 McDonough v. Moriarty
 
 , No. 299407,
 
 2005 WL 843882
 
 , at *2 (Mass. Land Ct. Apr. 12, 2005) ("Standing goes to the subject matter jurisdiction of the court and cannot be conferred by stipulation ...."); (5) parties cannot stipulate to appellate jurisdiction,
 
 see, e.g.
 
 ,
 
 Hogan v. G., C. & S.F. Ry. Co.
 
 ,
 
 411 S.W.2d 815
 
 , 816 (Tex. Civ. App. 1966) ("The appellate jurisdiction of this court cannot be created by consent[ ] [or] stipulation of the parties ...."); and (6) parties cannot stipulate to advisory opinions,
 
 see, e.g.
 
 ,
 
 Norman Enters. Interior Design, Inc. v. DeKalb Cty.
 
 ,
 
 245 Ga.App. 538
 
 ,
 
 538 S.E.2d 130
 
 , 134 (2000) ("The parties cannot do indirectly through the use of the joint stipulation and contingent settlement agreement what they could not do directly, i.e., obtain an advisory opinion from both the trial and appellate courts.").
 

 The majority in attempting to distinguish the facts of these cases from the one presented to us here ignores the crucial issue. The parties haven't waived the ownership question; they've merely ignored it and stipulated as to its outcome in an attempt to force this court to decide important constitutional questions in an inapt context. And rather than confront this point and the general and essential pronouncement of law present throughout the myriad cited cases, the majority undertakes a case-by-case factual comparison in the hopes of distinguishing our case.
 
 Supra
 
 ¶¶ 45-54. These procedural pyrotechnics avoid the substantive point. The parties' failure to litigate a claim here didn't leave the issue undecided. They assumed the decision as a necessary antecedent. The problem isn't over the minutia of whether streambed ownership is technically a new claim or new authority in support of an old claim. No, the issue is that the parties' litigation strategy necessitates an answer to the question of ownership, an answer the parties provided without briefing, acknowledgment, or our say so, in an attempt to mandate us to reach the constitutional questions surrounding the public trust doctrine. This we cannot allow.